**Wilburt SALES, Jr., Janice T. Sales, Plaintiffs–Appellees, Cross–Appellants,**

v.

**STATE FARM FIRE AND CASUALTY COMPANY, Defendant–Appellant, Cross–Appellee.**

No. 87–8467.

United States Court of Appeals, Eleventh Circuit.

July 20, 1988.

H. Michael Bagley, Atlanta, Ga., for defendant-appellant, cross-appellee.

Richard W. Hendrix, Finch, McCranie, Brown & Thrash, Atlanta, Ga., for plaintiffs-appellees, cross-appellants.

Before FAY and CLARK Circuit Judges, and GONZALEZ *, District Judge.

FAY, Circuit Judge:

State Farm Fire & Casualty Company ("State Farm") appeals a jury verdict awarding insurance proceeds to Janice Sales. Wilburt Sales, Janice's husband, cross-appeals the jury's failure to award him any of the proceeds. Because we find that the trial judge erroneously instructed the jury regarding Georgia's doctrine of innocent co-insureds, we remand for a new trial.

## I. BACKGROUND

On October 16, 1983, a fire totally destroyed the home of Wilburt and Janice Sales. State Farm insured the home. The policy named both Mr. and Mrs. Sales ("the Sales") as insureds. After the fire, Wilburt Sales submitted a sworn proof of loss statement which declared that he did not cause the damage. (Plaintiff's Exhibit # 3). State Farm, however, believed that Mr. Sales had committed arson and refused to pay the claim.

In March, 1984, the Sales sued in district court for the insurance proceeds. The trial judge instructed the jury that, under the doctrine of innocent co-insureds, Janice Sales, if innocent of misconduct, could recover even if the jury found that Wilburt Sales had committed arson. The jury subsequently awarded Mrs. Sales over $70,000 for her lost property and $14,300 in bad faith damages, but failed to award Mr. Sales any money. State Farm appeals the trial judge's instructions regarding the innocent co-insureds doctrine. Mr. Sales cross-appeals the admission into evidence of his previous fire losses.

## II. THE DOCTRINE OF INNOCENT CO-INSUREDS

### A. Georgia's Contract Approach

In this diversity case, we must apply Georgia law. *Richards v. Hanover Insurance Co.*, 250 Ga. 613, 299 S.E.2d 561 (1983), establishes the Georgia law governing the doctrine of innocent co-insureds. In *Richards*, Mrs. Betty Jo Richards sued to collect the proceeds from an insurance policy after her house burned down. Mrs. Richards held the policy with her husband. The insurance company, Hanover Insurance, refused to pay since Mr. Richards had been arrested for setting the house on fire. The trial judge instructed the jury to deny relief if either Mr. or Mrs. Richards intentionally burned the house. After the jury returned a verdict for Hanover Insurance, Mrs. Richards appealed.

In reversing the trial court, the Georgia Supreme Court noted the division among the states on whether the fraud of one co-insured spouse barred recovery by the innocent co-insured. *Richards*, 299 S.E.2d at 563; *see* Annotation, *Right of Innocent Insured to Recover Under Fire Policy Covering Property Intentionally Burned*

* Honorable Jose A. Gonzalez, Jr., U.S. District Judge for the Southern District of Florida, sitting by designation.

*by Another Insured,* 11 A.L.R.4th 1228 (1987). The court decided that the answer should depend on the language of the insurance contract. *Richards,* 299 S.E.2d at 563. The *Richards* contract provided that Hanover Insurance would not be liable "in the event of 'neglect of the *insured* to use all reasonable means to save and preserve property ...'" *Id.* (emphasis in contract).

The Supreme Court of Georgia determined that this "neglect" provision was ambiguous. The court stated that Mrs. Richards could read the language "the insured" as imposing an individual obligation to preserve the property which would void liability only to the insured who failed to comply with the provision. *Id.* at 563–64. Since the provision was ambiguous, Georgia law required the courts to interpret it in favor of the insured. *Id.* at 563. The court, therefore, held that Mrs. Richards' obligations were severable from Mr. Richards' obligations and that, consequently, Mrs. Richards could recover under the insurance contract if she had not participated in the arson.

From the *Richards* case, we discern two important points of Georgia law. First, whether or not Georgia courts will allow an innocent co-insured to recover depends upon the terms of the insurance contract. Second, if there are any ambiguities in the contract, the court will construe the language to allow recovery by the innocent co-insured.

### B. The Sales' Insurance Contract

■ The insurance contract between the Sales and State Farm contains two key provisions. The first provision states that the absence of fraud by any of the insureds is a condition to the agreement.

2. *Concealment or Fraud.* This entire policy shall be void if *any insured* has intentionally concealed or misrepresented any material fact or circumstance relating to this insurance. (Plaintiff's Exhibit # 1 at page 15) (emphasis added).

The second provision terminates State Farm's liability for any loss caused by the neglect of the insured.[1]

We believe that, in this case, the "fraud" provision unambiguously declares that Mr. and Mrs. Sales' rights and obligations are jointly rather than severally held. By stating that the entire policy is void when *any* insured intentionally conceals a material fact or circumstance, the contract clearly makes Mrs. Sales' recovery contingent upon Mr. Sales' conduct. Other courts have agreed that, unlike the phrase "the insured," the phrase "any insured" unambiguously expresses a contractual intent to create joint obligations and to prohibit recovery by an innocent co-insured. *See Spezialetti v. Pacific Employers Ins. Co.,* 759 F.2d 1139 (3rd Cir.1985); *Bryant v. Allstate Ins. Co.,* 592 F.Supp. 39 (E.D.Ky. 1984); *Snowden v. State Farm Fire and Casualty Co.,* 1983 Fire and Casualty Cases 206 (Tenn.Ct. of App.)

The Sales argue, however, that the "fraud" provision does not apply in the case of arson. First, the Sales claim that *Richards* requires us to analyze only the "neglect" provision of the insurance contract and not the "fraud" provision to determine whether an innocent co-insured can recover. Second, the Sales emphasize the word "has" in the "fraud" provision to conclude that the provision only concerns fraud in the application for insurance and not fraud in the filing of a claim. Third, the Sales argue that the presence of the "neglect" provision, which creates the severable obligation to preserve property, causes an ambiguity over the severability of obligations under the "fraud" provision. For the following reasons, we reject all of the Sales' contentions.

#### 1. We Can Analyze the "Fraud" Provision

■ We do not believe that *Richards* limits a court's analysis, in the case of arson, to the "neglect" provision of the contract at the expense of the "fraud" provision. In *Richard,* the insurance attorneys never brought the "fraud" provision to the attention of the supreme court. The insurance attorneys apparently believed

---

1. The second provision is practically identical to   the "neglect" provision evaluated in *Richards.*

that the "fraud" provision in *Richards*—which is distinguishable from the "fraud" provision in this case—would allow an innocent co-insured to recover and, therefore, decided not to mention the provision.[2] As a result, *Richards'* failure to mention the "fraud" provision does not exclude it from analysis.

### 2. "Fraud" Provision Applies to Claims for Proceeds

■ We also find that the word "has" does not limit the "fraud" provision to fraud which occurred in the application for insurance. Georgia has held that similar "fraud" provisions containing the word "has" are applicable to concealment or misrepresentation in proofs of loss and other statements. *See Goldberg v. Provident Washington Ins. Co.*, 144 Ga. 783, 87 S.E. 1077, 1079–80 (1916); *State Farm Fire and Casualty Co. v. Jenkins*, 167 Ga.App. 4, 305 S.E.2d 801, 802–03 (1983). If Mr. Sales committed arson, he unquestionably concealed his role in the fire when he filed his claim for proceeds. Since the sworn claim stated that he had not caused the damage, State Farm can accurately say that Mr. Sales *has* misrepresented material facts. Therefore, State Farm may rely on the "fraud" provision to void the policy.[3]

### 3. "Fraud" Provision Not Ambiguous Because of "Neglect"

Finally, although under *Richards* the phrase "the insured" in the "neglect" provision of the Sales' policy creates severable rights and obligations, there is no ambiguity as to the "fraud" provision before us. We should not create ambiguity "by lifting a clause or provision of the contract out of context." *Cherokee Credit Life Ins. Co. v. Baker*, 119 Ga.App. 579, 168 S.E.2d 171,

174–75 (1969). We must reasonably construct the language of the contract and not extend it beyond "what is fairly within its plain terms." *Fidelity & Deposit Co. v. Sun Life Ins. Co.*, 174 Ga.App. 258, 329 S.E.2d 517, 519 (1985). The "neglect" provision addresses each insured's individual duty to preserve the property. The "fraud" provision, on the other hand, addresses their joint duty to deal fairly and honestly with the insurance company. The insurance policy simply deals with fraud differently than neglect, just as the policy deals differently with business property than with household goods. We do not believe that the "neglect" provision creates any ambiguity in the language of the "fraud" provision.

We conclude that the "fraud" provision is triggered if Mr. Sales intentionally burned his house and then tried to claim under the insurance policy. Since the "fraud" provision states that the entire policy is void if any insured conceals or misrepresents material facts, we conclude that Mrs. Sales' rights under the policy may be voided by Mr. Sales' fraudulent conduct. We believe that Georgia's decision to let the insurance contract determine the rights of the parties mandates this result.

### III. MR. SALES' CROSS–APPEAL

■ Mr. Sales cross-appeals the admission into evidence of his prior fire losses. He concedes that this evidence was relevant to State Farm's defense that he voided the policy when he failed to mention the fire losses in his insurance application. Mr. Sales claims, however, that State Farm waived its defense of misrepresentation by sending a bill for the renewal premium of the policy after the breach.[4] Mr. Sales cites *State Farm Fire and Casualty Co. v.*

---

**2.** According to the State Farm attorneys, who also represented Hanover Insurance in the *Richards* case, the "fraud" provision stated that the policy was void to "any insured *who*" concealed material facts. Reply Brief of State Farm at 10 (quoting the *Richards* contract). This language suggests that fraud by Mr. Richards would only void the contract as to him. *Accord Haynes v. Hanover Insurance Co.*, 783 F.2d 136, 138 (8th Cir.1986).

**3.** *Cf. Short v. Oklahoma Farmers Union Ins.*, 619 P.2d 588, 590 (Okla.1980) (Arson itself is a fraudulent act, and therefore, voids the policy under the "fraud" provision.).

**4.** Our analysis of State Farm's alleged waiver of the misrepresentation defense mirrors the district court's analysis. *Sales v. State Farm Fire and Casualty Co.*, 632 F.Supp. 435, 436–37 (N.D. Ga.1986).

*Jenkins,* 167 Ga.App. 4, 305 S.E.2d 801, 802–03 (1983) and *Loeb v. Nationwide Mutual Fire Ins. Co.,* 162 Ga.App. 561, 292 S.E.2d 409, 410–11 (1982) for the proposition that, even though he never made the payment, State Farm's demand for payment constituted a waiver of the misrepresentation defense. Although these cases support his claim, the Georgia Court of Appeals wrote them. It is the state's highest court, however, which expresses the Georgia law that controls us. *Flintkote Co. v. Dravo Corp.,* 678 F.2d 942, 945 (11th Cir.1982). In this instance, the appellate court decisions directly contradict the Supreme Court of Georgia. In *Sullivan v. Connecticut Indemnity Association,* 101 Ga. 809, 29 S.E. 41, 42 (1897), the supreme court stated:

> If, in any event, the fact that such a demand was made could be treated as a waiver, this certainly ought not to be done when payment was refused. To hold otherwise, it seems to us, would be going contrary to the plainest principles of right and justice. At most, it could only be fairly said that the association had *offered* to waive the conditions expressed in the policy, and that the insured had declined to accept the offer.

(emphasis added). Consequently, we cannot find that State Farm waived its defense of misrepresentation simply by sending a bill for insurance premiums. We find, therefore, that the evidence was properly admitted.[5]

We find no error in any of the remaining issues presented by the parties.

REVERSED and REMANDED for a new trial.

---

CLARK, Circuit Judge, dissenting:

I respectfully dissent from the majority opinion. In my view, Georgia law dictates that (1) Mrs. Sales was entitled to recover if she played no role in the destruction of the Sales' property, (2) the misrepresentation provision applies only to misrepresentations in the Sales' application for insurance, and (3) State Farm waived its right to rely on the policy's misrepresentation provision. Accordingly, I would reverse the judgment against Mr. Sales and remand his case for retrial,[1] and affirm the judgment in favor of Mrs. Sales.

I.

I agree with the district court that this case is controlled by *Richards v. Hanover Insurance Co.,* 250 Ga. 613, 299 S.E.2d 561 (1983). At various points in its opinion, the *Richards* court stated:

1. The question is whether, in an action for fire insurance proceeds, the fraud of a co-insured spouse bars recovery by the innocent co-insured spouse. 299 S.E.2d at 562–63.

> To adopt a contrary rule would be tantamount to attributing Mr. Richards' wrongdoing to Mrs. Richards solely on the basis of their marital relationship, a result which we have steadfastly rejected in other areas, ... and which we decline to reach in the present case. We therefore hold that Mrs. Richards is not automatically barred from recovery under her homeowners policy by her husband's alleged act of arson. If, on retrial, the insurance company again asserts the "neglect provision" exclusion, it has the initial burden of proving that one of the co-insureds breached that provision by intentionally setting fire to the dwelling.... Once this is shown, however, the burden shifts to Mrs. Richards (as the co-insured claiming coverage under the policy) to prove her non-participation in the alleged wrongful conduct.

---

**5.** We also find that the district court did not abuse its discretion in finding that the relevance of the prior fire losses to the misrepresentation defense outweighed any prejudicial effect the evidence may have had on Mr. Sales' claim of innocence on the arson charge.

**1.** A retrial would be necessary because it is impossible to determine from the district court's instructions whether the jury found against Mr. Sales because it believed that he set the fire or caused it to be set, a theory on which State Farm was entitled to rely, or because it believed that he misrepresented the Sales' prior fire history, a theory on which, in my view, State Farm is not entitled to rely.

*Id.* at 564. I read these passages as a policy or philosophical statement by the Georgia Supreme Court that where an insurance company has evidence that one spouse intentionally set fire to jointly owned property, the company has the burden of proving that fact. The co-insured spouse who asserts innocence then has the burden of proving that he or she did not participate in the alleged wrongful conduct. This policy is a sound one. For there will certainly be cases where an innocent spouse has contributed greatly to the purchase of the property, yet the other spouse desires money and commits the arson in order to receive one-half of the payment after the fire. The purpose of the Georgia Supreme Court's opinion is to strike a protective compromise: allowing innocent spouses to recover provided they can prove that they did not participate in the misconduct.

## II.

Even assuming that State Farm was entitled to rely on the concealment or fraud provision of the policy, I cannot agree with the majority's construction of the policy language. The misrepresentation provision reads: "This entire policy shall be void if any insured *has* intentionally concealed or misrepresented any material fact or circumstance relating to this insurance." (Emphasis added.) The use of the present perfect tense makes it clear that this part of the policy is directed at misrepresentations in the insured's application.

In Part II(2) of its opinion, the majority asserts that the Georgia courts have held that similar misrepresentation provisions including the word "has" are applicable to concealment or misrepresentations in proofs of loss and other post-application statements. However, both of the cases on which the majority relies involved policies with additional, express language indicating that misrepresentations subsequent to

the application would be sufficient to forfeit the policy. In *Goldberg v. Provident Washington Insurance Co.*, 144 Ga. 783, 87 S.E. 1077 (1916), the policy read:

This entire policy shall be void if the insured has concealed or misrepresented, in writing or otherwise, any material fact or circumstance concerning this insurance or the subject thereof; or if the interest of the insured in the property be not truly stated herein; or in case of any fraud or false swearing by the insured touching any matter relating to this insurance or the subject thereof, *whether before or after a loss.*

*Id.* at 785, 87 S.E. 1077 (emphasis added). Similarly, in *State Farm Fire & Casualty Co. v. Jenkins*, 167 Ga.App. 4, 305 S.E.2d 801 (1983), the policy read: "This entire policy shall be void if *whether before or after a loss* the insured has willfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof." 305 S.E.2d at 802 (emphasis added). In contrast, the policy here includes no direct references to make the reader think misrepresentations after the policy goes into effect are covered by the misrepresentation provision.

In view of the policy's unambiguous language, I cannot agree with the majority's reliance on the misrepresentation provision to the extent it holds that both Mr. and Mrs. Sales must be denied recovery because the jury's verdict reflects its finding that Mr. Sales lied when he swore that he was not responsible for the fire.[2] If there is any subject upon which property insurers have great experience, it is the reality that arson occurs. If State Farm intended to include concealment of arson within the misrepresentation provision, it should have used language similar to that used in the *Goldberg* and *Jenkins* cases.

## III.

The Sales argue that State Farm waived its right to rely on the misrepresentation

---

**2.** Due to its broad construction of the misrepresentation provision, the majority does not distinguish State Farm's allegation that Mr. Sales misrepresented the Sales' prior fire history during the application process from the insurer's allegation that Mr. Sales misrepresented his

conduct when he filed the proof of loss. I would draw this distinction—and would be willing to apply the misrepresentation provision to the former allegation—if there were not reason to conclude that State Farm waived reliance on the misrepresentation provision altogether.

defense when it sent a bill for the renewal premium after Sales allegedly committed the misrepresentation. They cite *State Farm Fire & Casualty Co. v. Jenkins,* 167 Ga.App. 4, 305 S.E.2d 801, 802–03 (1983), and *Loeb v. Nationwide Mutual Fire Insurance Co.,* 162 Ga.App. 561, 292 S.E.2d 409, 410–11 (1982), in support of this theory. The majority concludes that those cases are not binding, as they are only Georgia Court of Appeals cases, and an 1897 Georgia Supreme Court case, *Sullivan v. Connecticut Indemnity Association,* 101 Ga. 809, 29 S.E. 41, 42 (1897), dictates the opposite result.

In *Jenkins,* the insurance policy included a misrepresentation provision similar to the one here. The insurer alleged that the insured had represented in his proof of loss that certain items were in the house when it burned even though they had been removed. 305 S.E.2d at 802. The Court of Appeals found that the insurer had waived its misrepresentation defense when it sent the insured a bill for a renewal premium after the proof of loss had been filed. *See id.* at 803, 29 S.E. 41. The court stated specifically that it did not matter if the bill was paid: "it is of no consequence ... that the insured did not actually pay the renewal premiums, as a demand for payment in full for premiums due acted as a waiver." *Id. Loeb,* the other Court of Appeals case, is to the same effect, but the insured there based his waiver claim not only on the demand, but on the fact that the insurer had actually received the premiums, a claim somewhat more compelling than this one.

In *Sullivan,* the life insurance policy included provisions (1) that the insurance would not take effect until the first payment was made during the insured's lifetime, and (2) that if notes given for payment were not paid at their maturity, the policy would lapse. The insured, during his lifetime, gave notes for his first premium, but he did not pay the notes at their maturity. The insurer then made a demand on the notes, which the insured did not satisfy. The Supreme Court held that the demand alone, without payment, was not a waiver of the maturity provision:

"[t]o hold otherwise, ... would be going contrary to the plainest principles of right and justice." 29 S.E. at 42.

As these summaries indicate, the factual scenario in *Jenkins,* one of the Court of Appeals cases, is virtually identical to that here. *Sullivan,* on the other hand, presents a very different situation. The insured in *Sullivan* was arguing that a demand for payment was a waiver of a *payment* provision. It is thus easy to understand why the court was unwilling to find a waiver: it would be anomalous to say that by expressing its concern over getting paid, the insurer was waiving its right to get paid. If the court had found a waiver, coverage would have extended indefinitely without the premiums' ever being paid. Hence, *Jenkins* and *Sullivan* are not really in conflict, and *Jenkins,* because it is direct, on-point authority, should be applied.