**Carol MEYERS, individually and as Administrator of the Estate of James Meyers, Plaintiff,**

**v.**

**STATE FARM FIRE AND CASUALTY COMPANY, Defendant.**

**No. 1:91–cv–848–RHH.**

United States District Court,
N.D. Georgia,
Atlanta Division.

June 17, 1992.

---

Robert E. Richardson, Smyrna, Ga., Leon Arthur Van Gelderen, Harris Van Gelderen & Cruz, Atlanta, Ga., for plaintiff.

Mark Thomas Dietrichs, Marybeth Vassil, Swift Currie McGhee & Hiers, Atlanta, Ga., for defendant.

## ORDER

ROBERT H. HALL, District Judge.

This is an action brought pursuant to a homeowner's insurance policy. This court is vested with diversity jurisdiction over the matter pursuant to 28 U.S.C. § 1332. The case is presently before the court on Defendant's Motion to Supplement Defendant's Motion for Summary Judgment [20–1], and Defendant's Motion for Summary Judgment [19–1]. The Court GRANTS as unopposed Defendant's Motion to Supplement Defendant's Motion for Summary Judgment [20–1], and furthermore GRANTS Defendant's Motion for Summary Judgment [19–1].

## BACKGROUND

Plaintiff Carol Meyers is a resident of the State of Georgia. Defendant State Farm Fire and Casualty Company is a corporation organized under the laws of the

State of Illinois with its principal place of business in that state. Defendant issued to Plaintiff and her now deceased husband, James Meyers, a homeowner's insurance policy (the "policy"), Policy No. 11–40–3102–3, effective September 27, 1989 through September 27, 1990. That policy provided coverage for Plaintiff's residence located at 3235 Able Court, Marietta, Georgia 30062–5453.

The specific terms of the policy provide as follows:

**Concealment or Fraud.**

This policy is void as to you and any other insured if you or any other insured under this policy has intentionally concealed or misrepresented any material fact or circumstances relating to this insurance, whether before or after a loss.

Policy, Sections I and II—Conditions.

The policy further provides that following a loss, the insureds are required to submit to an examination under oath and to provide to Defendant certain information, records and documents regarding their financial condition. *See* Policy, Section I—Conditions.

On or about March 18, 1990, Plaintiff's house and certain contents contained therein were destroyed by fire. On or about March 20, 1990, the fire was reported to Walter J. Campbell, a Resident Claim Superintendent employed by Defendant, as being suspicious in nature. Due to this report of the fire as being suspicious in nature, Campbell requested that a cause and origin investigation be conducted. This investigation was subsequently conducted by R.L. Kennedy of Kennedy & Kennedy, Inc. As a result of his investigation, Kennedy reported to Campbell that it was his opinion that the fire had been intentionally set.

Due to both the suspicious nature of the fire, and Kennedy's findings, Campbell determined that it was necessary to conduct a full investigation into the circumstances and events surrounding the fire. As stated before, pursuant to the terms of the policy, the insureds, here Plaintiff and her husband, in such a situation are required to submit to an examination under oath and to provide information, records and documents regarding their financial condition. By letter dated May 22, 1990, Defendant notified Plaintiff and her husband of Defendant's suspicions regarding the nature of their fire loss, and requested that they appear for their examinations under oath and provide certain financial information, as provided for by the policy.

Meanwhile, on or about May 8, 1990, Plaintiff and her husband submitted to Defendant a partial sworn statement in proof of loss making claim for payment under the policy in the amount of $185,614.37.

As permitted under the terms of the policy, Defendant conducted the examination under oath of James Meyers ("Meyers") on May 29, 1990, and of Plaintiff on August 16, 1990. At the examination of Meyers, Defendant's attorney reminded Meyers of his duty under the policy as follows:

I do want to warn you that your policy states that if you misrepresent or conceal any material facts, the insurance contract is void. Therefore, it is important that you be completely truthful and honest in responding to my questions. Do you understand that?

To which Meyers responded, "Yes." *See* Exhibit 4 attached to Defendant's Motion for Summary Judgment, pp. 5–6. Likewise, during the examination of Plaintiff, Defendant's attorney advised her of the following:

I do want to warn you that the policy provides that if you misrepresent or conceal any material facts, the policy is void. That means that it's important that you be completely truthful in responding to my questions and don't try to hide information or play word games. If I ask a question and there's an answer to it, give me the full answer and that will save both of us some time and some problems. Okay?

To which Plaintiff responded, "That's just fine." *See* Exhibit 5 attached to Defendant's Motion for Summary Judgment, pp. 5–6.

After the completion of their examinations under oath, Defendant forwarded to

Plaintiff and her husband the transcripts of their examinations and requested that they read the transcripts in order to ensure that the information contained in the transcripts was accurate and truthful. Plaintiff and her husband were also at this time given the opportunity to correct anything in the transcripts and make any changes on the errata sheet provided. Both Plaintiff and her husband reviewed their respective transcripts, signed the errata sheets before a notary public, and returned them, without substantial change, to Defendant in September, 1990.

Upon conducting its own investigation of the financial affairs of Plaintiff and her husband, Defendant determined that both Plaintiff and her husband had intentionally misrepresented material financial facts during the course of their examinations under oath. As a result, under the terms of the policy, Defendant determined that the policy was void and that Plaintiff could not recover thereunder. By letter dated October 22, 1990, Defendant thus denied the Meyerses' claim, stating as one of its grounds for denial that the Meyerses misrepresented and concealed material facts and circumstances relating to their finances, their alleged loss, their claim for insurance proceeds, and other facts relevant to Defendant's investigation.

On March 15, 1991, Plaintiff, on behalf of herself and her now deceased husband, commenced the instant action through the filing of her Complaint in the Superior Court of Dekalb County, Georgia. Thereafter, on April 15, 1991, Defendant removed the case to this court on the basis of diversity jurisdiction. In her Complaint, Plaintiff seeks recovery under the terms of the policy for various actual fire-related losses totalling $315,000.00, statutory bad faith penalties for failure to pay amounting to 25% of the loss recoverable, or $78,-750.00, and reasonable attorney's fees.

Presently, Defendant has moved for summary judgment on all of Plaintiff's claims, and furthermore has requested leave to supplement its Motion for Summary Judgment.

## DISCUSSION

### I. *Defendant's Motion to Supplement Defendant's Motion for Summary Judgment*

As an initial matter, Defendant has filed a Motion to Supplement Defendant's Motion for Summary Judgment. Recognizing that it had attached to its Motion for Summary Judgment an original, unsigned affidavit of Paul Miedona, Defendant in this Motion requests the opportunity to supplement its Motion by providing the original, executed, notarized affidavit of Mr. Miedona. Plaintiff does not oppose Defendant's request. The court therefore GRANTS as unopposed Defendant's Motion to Supplement [20–1].

### II. *Defendant's Motion for Summary Judgment*

### A. Standard of Review for Summary Judgment

This Court will grant summary judgment when "there is no genuine issue as to any material fact ... and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In cases where the movant is the defendant, that party must demonstrate that the nonmoving party, the plaintiff, lacks evidence to support an essential element of her or his claim. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986), *cert. denied,* 484 U.S. 1066, 108 S.Ct. 1028, 98 L.Ed.2d 992 (1988). Where, as here, the movant is the plaintiff, that party must demonstrate the absence of an issue of material fact with regard to *every* element essential to his or her claim. *Id.* The movant's burden is "discharged by showing—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* However, it is not enough in most situations for the movant merely to point out to the court this absence of evidence. *Id.* at 323, 106 S.Ct. at 2552; *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir.1991). Rather, "a party seeking summary judgment always bears the initial responsibility of informing the district

court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552. (quoting Fed.R.Civ.P. 56(c)).

Only after the movant meets its initial burden does any obligation on the part of the nonmovant arise. *Id.; Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970); *Clark*, 929 F.2d at 608. Nevertheless, once the movant has met this initial burden, the opposing party must present evidence establishing a material issue of fact. *Celotex*, 477 U.S. at 325, 106 S.Ct. at 2553. The nonmoving party must go "beyond the pleadings" and present evidence designating "specific facts showing that there is a genuine issue for trial." *Id.* at 324, 106 S.Ct. at 2553.

All evidence and factual inferences should be viewed in the light most favorable to the nonmoving party. *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1529 (11th Cir.1987); *Everett v. Napper*, 833 F.2d 1507, 1510 (11th Cir.1987). However, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (emphasis in original). An issue is not genuine if it is unsupported by evidence or is created by evidence that is "merely colorable" or "not significantly probative." *Id.* at 250, 106 S.Ct. at 2511. Similarly, a fact is not material unless it is identified by the controlling substantive law as an essential element of the nonmoving party's case. *Id.* at 248, 106 S.Ct. at 2510. Thus, to survive a motion for summary judgment, the nonmoving party must come forward with specific evidence of every element essential to his or her case so as to create a *genuine* issue for trial. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552; *Rollins*, 833 F.2d at 1528.

**B. Application**

█ In moving for summary judgment in the instant case, Defendant argues that the undisputed facts establish that during the course of their examinations under oath, both Plaintiff and her husband intentionally misrepresented to Defendant material facts regarding their financial condition during the period immediately preceding the fire. Thus, contends Defendant, under the terms of the policy itself, that policy is void, thereby barring Plaintiff's recovery thereunder. Defendant thus concludes that it is entitled to judgment as a matter of law in the instant case. This court agrees.

In the rather voluminous exhibits submitted in conjunction with its Motion for Summary Judgment, Defendant presents an excess of evidence indicating that indeed, during the course of their examinations under oath, both Plaintiff and her husband substantially and materially misrepresented the state of their financial affairs during the period immediately preceding the fire. Although both Plaintiff and her husband at the outset of their examinations were warned of the possibility that the policy would be deemed void as the result of such misrepresentations, Plaintiff and her husband nevertheless substantially misrepresented numerous aspects of their financial condition during the period immediately preceding the fire.

Among other things, Defendant presents evidence that both Plaintiff and her husband stated under oath that: (1) they had no outstanding credit card expenses or obligations, when in fact they had a number of credit cards with outstanding balances, including Sears and VISA; (2) they had no outstanding utility bills, when in fact they were substantially past due in making payments owed to the Georgia Power Company, the Atlanta Gas Light Company, the Cobb County water system, Southern Bell, and Summit Cable Services; (3) within the three months immediately preceding the fire, neither Plaintiff nor her husband had attempted to procure a loan from any lending institution, when in fact, during the two weeks immediately preceding the fire,

Plaintiff and her husband had applied for loans from Tower Financial Services, Inc., Equity Mortgage Lenders, a/k/a Everfirst Mortgage, Southern Financial Equity Corporation, and the Money Store, all of which had rejected their loan application; and (4) they had no additional outstanding loans, such as personal or car loans, when in fact they had an outstanding loan from Home Federal in the amount of $3,500 which was due in full on July 11, 1990; they had an outstanding loan in the amount of $6,525 from Home Federal which was due in full on July 4, 1989; and they had an outstanding loan in the amount of $3,050 from Home Federal which was due in full on July 18, 1990.

In addition, Defendant presents evidence that both Plaintiff and her husband stated under oath that at the time of the fire, they had no other unusual or outstanding expenses or debts. In fact, Plaintiff had previously been found to owe to the Diocese of Grand Rapids, Michigan (the "Diocese") a sum in excess of $35,000 in conjunction with a settlement agreement between Plaintiff and the Diocese. This settlement agreement concerned a previous dispute over funds allegedly misappropriated by Plaintiff from the Our Lady of Grace Parish during her employment there from 1980 through 1984. Nevertheless, neither Plaintiff nor her husband at any time revealed either the existence of the settlement agreement, the substantial sums due thereunder, or the nature of the claims of embezzlement and misappropriation of funds asserted against Plaintiff.

Defendant also presents evidence that both Plaintiff and her husband materially misrepresented Mr. Meyers' employment situation during the period immediately preceding the fire. They stated under oath that Meyers worked for Jomac Roller through early March 1990, and that he voluntarily resigned due to a conflict in business practices. They further stated that Meyers was offered a job by All States Paper on March 11, 1990, prior to leaving the employment of Jomac Roller, and prior to the occurrence of the fire, and also that he in fact began working for All States Paper approximately one month prior to the fire. Defendant presents evidence, however, that, despite the representations of Plaintiff and her husband, Meyers in fact was employed by Jomac Roller from January 10, 1990 through March 5, 1990, at which time he resigned due to personal problems unrelated to the business practices of Jomac Roller. Defendants also present evidence that Meyers in fact was not offered a job by All States Paper until March 23, 1990, *after* the occurrence of the fire.

Finally, Defendant presents evidence that during his examination under oath, Meyers likewise misrepresented his own previous criminal and misdemeanor record. Specifically, Meyers stated that he had no such record, when in fact the certified records of the State Court of Cobb County, Georgia show that he was charged with shoplifting on April 28, 1989, for which a bond in the amount of $1,000 was posted and a nolle prosequi plea was entered subsequent to his attending a state court diversion program; he was arrested for failure to stop and render aid on November 16, 1989, for which a bond in the amount of $1,050 was posted, which was later forfeited and a bench warrant was issued for his arrest due to his failure to appear in court on the appointed date, resulting in a judgment in that amount being entered against him; and on November 16, 1989, Meyers was arrested and charged with three counts of motor vehicle theft and one count of theft by receiving stolen property, for which a $30,000 bond was posted in the Superior Court of Cobb County, Georgia, and an indictment was issued on August 2, 1990. With regard to this final arrest and indictment, Defendant presents evidence that between August 9, 1990 and January 9, 1991, the Meyerses received six notices from the Superior Court of Cobb County informing them that Meyers' trial date had been finally scheduled for January 28, 1991. However, on May 21, 1991, the indictment against Meyers was disposed of as nolle prosequi due to the fact that Meyers had passed away.

In responding to Defendant's Motion, Plaintiff presents no evidence whatsoever

indicating the existence of an issue of material fact with regard to either the existence or the nature of the misrepresentations in the instant case. Indeed, Plaintiff does not contend that Defendant inaccurately depicts her and her husband's financial situation at the time of the fire. Likewise, Plaintiff does not contend that in fact she or her husband disclosed all of these facts to Defendant at the time of their examinations. Rather, Plaintiff apparently contends that given these virtually undisputed facts, Defendant nevertheless is not entitled to judgment as a matter of law.

Specifically, Plaintiff responds to Defendant's Motion by advancing several arguments. First, Plaintiff argues that the instant misrepresentations may not be deemed, *as a matter of law,* to be "material" so as to preclude recovery under the terms of the policy. This court, however, does not agree. With regard to questions of materiality of misrepresentation in insurance contracts, "Georgia courts employ a reasonableness test, an objective standard of conduct against which to measure the effect of the insured's false declarations." *Woods v. Indep. Fire Ins. Co.,* 749 F.2d 1493, 1497 (11th Cir.1985). *See also Sentry Indemnity Co. v. Brady,* 153 Ga. App. 168, 170, 264 S.E.2d 702 (1980) ("A material misrepresentation is one that would influence a prudent insurer in determining whether or not to accept the risk...."); *Lee v. Metropolitan Life Ins. Co.,* 158 Ga. 517, 518, 123 S.E. 737 (1924) (same).

This court also recognizes, however, that under Georgia law, "whether a misrepresentation is material because it would influence a prudent insurer's decision to insure is usually a jury question." *Woods,* 749 F.2d at 1497. Nevertheless, the court in *Woods,* in confirming the lower court's ruling in that case that the materiality of a misrepresentation could be decided as a matter of law by the court on a motion for summary judgment, the Court stated that " '[m]ateriality is a mixed question of law and fact that can be decided as a matter of law if reasonable minds could not differ on the question.' " 749 F.2d at 1496 (quoting

*Long v. Ins. Co. of N. Am.,* 670 F.2d 930, 934 (10th Cir.1982)).

■■■ This court finds that in the present case, as in *Woods,* disposition of the matter on summary judgment is appropriate for several reasons. As an initial matter, the court finds that in the instant case, "reasonable minds could not differ" with regard to the question of the materiality of the misrepresentations given by Plaintiff and her husband. Where the policy expressly provides not only for the examination under oath of the insureds and their provision of detailed financial information following a loss, but also, in the event any insured makes any misrepresentation during the course of such examination, for the policy to be deemed void, clearly any misrepresentation with regard to finances given during the course of the post-loss examination must be deemed to be material in nature. Moreover, where the parties expressly contracted for a post-loss financial examination under oath, as well as the voiding of the policy due to any post-loss financial misrepresentation, surely they must be deemed to be aware of the presumed material nature of such information.

Moreover, unlike even the situation in *Woods,* this court is not faced with a situation in which it must determine whether, absent misrepresentations provided *prior* to the execution of the policy, the insurer would have extended the coverage upon which the alleged liability is based. Rather, this court is faced with a situation in which, *subsequent* to the loss for which recovery is sought—the cause of which loss had previously been determined to be questionable in nature—an insurer specifically, pursuant to the express terms of the agreement between the parties, arranged for an examination under oath of the insureds with the express intention of determining the existence of any financial or other motive for arson. Clearly, given this situation, any misrepresentation provided by the Meyerses with regard to their financial situation immediately prior to the fire must be deemed to be material as a matter of law and common sense.

This conclusion is further supported by the findings of the Court in *Mulkey v. United States Fidelity & Guaranty Ins. Co.*, 243 S.Ct. 121, 132 S.E.2d 278 (1963), *overruled in part on other grounds, Johnson v. South State Ins. Co.*, 288 S.C. 239, 341 S.E.2d 793, 794 (1986). In *Mulkey*, the Court found that an insured's post-loss misrepresentation concerning his whereabouts in an arson case was material as a matter of law. In holding that the misrepresentation was material in that case, the Court held that while the misrepresentation was not necessarily material to the plaintiff's claim of loss absent any suspicion of arson, it was material once considered in light of a possible arson defense. *Id.* 132 S.E.2d at 284. *See also Edmiston v. Schellenger*, 343 So.2d 465, 466 (Miss. 1977) ("With regard to insurance investigations, this Court takes a broad view of materiality."). Indeed, the Court in *Edmiston* cited the Supreme Court's decision in *Claflin v. Commonwealth Ins. Co.*, 110 U.S. 81, 3 S.Ct. 507, 28 L.Ed. 76 (1883). In *Claflin*, the Supreme Court held:

> The object of the provisions in the policies of insurance, requiring the assured to submit himself to an examination under oath, to be reduced to writing, was to enable the company to possess itself of all knowledge, and all information as to other sources and means of knowledge, in regard to the facts, material to their rights, to enable them to decide upon their obligations, and to protect them against false claims. And every interrogatory that was relevant and pertinent in such an examination was material, in the sense that a true answer to it was of the substance of the obligation of the assured.

*Id.* at 94–95, 3 S.Ct. 514–515.

Moreover, it is merely a matter of common sense that where an insurer alleges arson as a defense to a claim for fire loss, the financial status and potential financial gain to the insured—as the suspected arsonist—are circumstances material to that defense. *See, e.g., Halcome v. Cincinnati Ins. Co.*, 254 Ga. 742, 744, 334 S.E.2d 155 *aff'd*, 778 F.2d 606 (11th Cir.1985) (where "there is evidence of possible fraud" regarding the attempts of an insured to recover under an insurance policy, "[a] complete investigation of the claim includes an investigation of the suspected fraud", to which investigation the insured's "recent income and sources of income are relevant.").

■ Second, Plaintiff argues that the misrepresentations in the instant case were not made willfully or with an intent to deceive Defendant, but rather were made out of oversight or a misunderstanding of certain questions being asked. The court finds this argument to be disingenuous at best. Plaintiff and her husband had been notified not only of Defendant's own findings that their fire loss was suspicious in nature, but also of Kennedy's findings indicating that the fire had been intentionally set. Thereafter, they were notified that Defendant had scheduled their examinations under oath, to which they were to bring detailed financial information. Clearly, Plaintiff and her husband should have been aware of the fact that the examinations constituted Defendant's attempt to determine the existence of any financial or other motive for arson, which Defendant already suspected as the true cause of the loss. As a result, the court finds disingenuous Plaintiff's present attempt to persuade the court that neither she nor her husband understood the import of the financially-related questions being asked of them, and indeed that neither Plaintiff nor her husband understood the types of information which Defendant was attempting to ascertain—which indeed was the very information which both Plaintiff and her husband failed to provide, and which would have severely damaged their chances for recovery under the policy.

■ Third, Plaintiff argues that under the "innocent spouse doctrine", Plaintiff may not be held liable for the misrepresentations of her spouse. Again, this court does not agree. As both parties recognize, this issue was directly addressed by this circuit in *Sales v. State Farm Fire & Casualty Co.*, 849 F.2d 1383 (11th Cir.1988). There, the Court cited the decision in *Rich-*

*ards v. Hanover Ins. Co.,* 250 Ga. 613, 299 S.E.2d 561 (1983) in holding that whether the fraud of one co-insured spouse bars recovery by the other insured spouse depends entirely on the language of the insurance contract. Thus, although recognizing that under Georgia law, any ambiguities in the insurance contract are to be construed in favor of the insureds, the Court nevertheless looked to the language of the policy in that case as dispositive of the issue. That policy, much like the one at issue in this case, expressly provided that the "entire policy shall be void if *any insured* has intentionally concealed or misrepresented any material fact or circumstance relating to this insurance." *Id.* at 1385. The Court in *Sales* held that this provision unambiguously establishes that the rights and obligations of the insureds are *jointly* held. "By stating that the entire policy is void when *any* insured intentionally conceals a fact or circumstance, the contract clearly makes Mrs. Sales' recovery contingent upon Mr. Sales' conduct." *Id.* (emphasis in original). In support of this finding, the *Sales* Court makes a distinction between use of the phrase "the insured" versus the use of the phrase "any insured"—finding the latter to express a contractual intent to create *joint* rather than *several* obligations. *Id.* Thus, the Court in *Sales* held that where an insurance policy clearly and unambiguously makes the rights and obligations of the insureds interdependent, such language should be strictly applied.

Moreover, the express language of the policy provision at issue in the instant case is even more explicit than that at issue in *Sales.* In the instant case, the policy expressly states that the policy is void as to "you and any other insured, if you or any other insured" conceals or misrepresents material facts and circumstances relating to the insurance. *See* Policy, Sections 1 and 2—Conditions. Thus, the language employed in the policy at issue in the instant case makes it clear that any misrepresentations engaged in by *any* insured will void the policy as to *all* insureds, regardless of the alleged innocence of one of the insureds. Pursuant to the rule enumerated

in *Sales,* this court is required to honor that express language.

In addition, the court finds that even if the individual misrepresentations of *her husband* were deemed insufficient to void the policy as to *Plaintiff,* evidence presented by Defendant overwhelmingly establishes its right to void the policy as to Plaintiff solely on the grounds of her own misrepresentations, which in fact substantially mirror those of her husband.

■ Finally, Plaintiff argues that even if Defendant proves that Plaintiff and/or her husband materially misrepresented their financial situation immediately prior to the fire, "Defendant must still prove arson or show how any of the above misrepresentations would have in and by (sic) itself allow[ ] it to avoid the policy." Plaintiff's Brief in Response to Defendant's Motion for Summary Judgment, p. 8. This argument is likewise without merit. The policy clearly provides that misrepresentations such as those provided by Plaintiff and her husband in the instant case, standing alone, are sufficient grounds for voiding the policy as to both insureds. Thus, Defendant need not provide additional proof that such voiding of the policy is appropriate. Likewise, given the material misrepresentations provided by both Plaintiff and her husband, Defendant in the instant case is not, contrary to Plaintiff's contention, required to prove arson in order to void the policy. Proof of material misrepresentation alone, pursuant to the clear and express terms of the policy itself, constitute sufficient grounds upon which to void the policy.

The court finds that in the instant case, Plaintiff has failed to meet her burden of going "beyond the pleadings" and indicating the existence of an issue of material fact with regard to the misrepresentations at issue. Moreover, the court finds the undisputed facts to indicate that Defendant is entitled to judgment as a matter of law.

## CONCLUSION

The court GRANTS as unopposed Defendant's Motion to Supplement Motion for Summary Judgment [20-1], and further-

more GRANTS Defendant's Motion for Summary Judgment [19-1].

SO ORDERED.