**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

INTERSTATE FIRE & CASUALTY
COMPANY, INC., an Illinois
corporation,
*Plaintiff-Counter-Defendant–*
*Appellant*,

v.

ROMAN CATHOLIC CHURCH OF THE
DIOCESE OF PHOENIX, a corporation
sole, by and through Bishop Thomas
J. Olmsted, his predecessors and
successors,
*Defendant-Counter-Claimant–*
*Appellee*.

No. 12-17195

D.C. No.
2:09-cv-01405-
NVW

INTERSTATE FIRE & CASUALTY
COMPANY, INC., an Illinois
corporation,
*Plaintiff-Counter-Defendant–*
*Appellee*,

v.

ROMAN CATHOLIC CHURCH OF THE
DIOCESE OF PHOENIX, a corporation
sole, by and through Bishop Thomas

No. 12-17264

D.C. No.
2:09-cv-01405-
NVW

J. Olmsted, his predecessors and
successors,
         *Defendant-Counter-Claimant–*
                        *Appellant.*

INTERSTATE FIRE & CASUALTY
COMPANY, INC., an Illinois
corporation,
         *Plaintiff-Counter-Defendant–*
                        *Appellant*,

                v.

ROMAN CATHOLIC CHURCH OF THE
DIOCESE OF PHOENIX, a corporation
sole, by and through Bishop Thomas
J. Olmsted, his predecessors and
successors,
         *Defendant-Counter-Claimant–*
                        *Appellee.*

No. 13-15223

D.C. No.
2:09-cv-01405-
NVW

OPINION

Appeal from the United States District Court
for the District of Arizona
Neil V. Wake, District Judge, Presiding

Argued and Submitted
May 13, 2014—San Francisco, California

Filed July 30, 2014

Before: Dorothy W. Nelson, M. Margaret McKeown,
and Milan D. Smith, Jr., Circuit Judges.

Opinion by Judge McKeown;
Dissent by Judge D.W. Nelson

## SUMMARY[*]

### Arizona Insurance Law

The panel reversed the district court's judgment in favor of the Roman Catholic Church of the Diocese of Phoenix, and vacated and remanded the district court's grant of attorneys' fees and taxable costs, in a diversity insurance coverage case concerning indemnity for the alleged sexual abuse of adolescent males by priests in the Diocese.

Following the Diocese's settlement of four lawsuits for alleged sexual abuse by its priests, the Diocese sought indemnification under its insurer's excess liability indemnity policies. The policy excluded "liability of any Assured for assault and battery committed by or at the direction of such Assured . . . ." The district court construed the exclusion as applying only to the offending priest, and concluded that the exclusion did not foreclose coverage for the Diocese of the sexual abuse claims.

The panel held, based on the ordinary meaning of the exclusion and consistent with Arizona law, because the

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

exclusion precluded coverage for "any assured" the assault and battery exclusion categorically excluded coverage for both the insured who committed the assault and battery as well as innocent co-insureds. The panel remanded to the district court to determine whether the insurer was the "successful party" under Arizona law, and if so, whether to award attorneys' fees.

Judge D.W. Nelson dissented because she believes that the disputed policy provision excluded coverage only for those individuals who committed or directed an assault or battery, and she would affirm the district court.

## COUNSEL

Steven G. Mesaros (argued), Richard H. Goldberg, and Kevin R. Myer, Renaud Cook Drury Mesaros, Phoenix, Arizona; Timothy J. McNamara, Onebane Law Firm, Lafayette, Louisiana, for Plaintiff-Counter-Defendant–Appellant-Cross-Appellee.

Andrew S. Jacob (argued) and Andrew B. Turk, Polsinelli PC, Phoenix, Arizona, for Defendant-Counter-Claimant–Appellee-Cross-Appellant.

**OPINION**

McKEOWN, Circuit Judge:

Does "any" mean "any," or does "any" mean "any one"? The answer to this seemingly simple question dictates the result in this insurance coverage case, which arises from the alleged sexual abuse of adolescent males by priests in the Roman Catholic Church of the Diocese of Phoenix ("the Diocese"). The excess indemnity policy provided by Interstate Fire & Casualty Company, Inc. ("IFC") to the Diocese excludes "liability of any Assured for assault and battery committed by or at the direction of such Assured . . . ." Based on the ordinary meaning of this exclusion and consistent with Arizona law, we conclude that "the language 'any insured' . . . express[es] a contractual intent to prohibit recovery by innocent co-insureds." *Am. Family Mut. Ins. Co. v. White*, 65 P.3d 449, 457 (Ariz. Ct. App. 2003). We reverse the district court's judgment in favor of the Diocese, and vacate and remand its grant of attorneys' fees and taxable costs.

This action follows the Diocese's settlement of four lawsuits for alleged sexual abuse by its priests, after which the Diocese filed a declaratory judgment action seeking entitlement to indemnification under IFC's excess liability indemnity policies. IFC's policies typically "follow[ed] form" with those of Lloyd's of London, the Diocese's primary excess insurer. The general liability clause in Lloyd's of London's insuring policy provided:

> Underwriters hereby agree, subject to the limitations, terms and conditions hereunder mentioned, to indemnify the Assured for all

sums which the Assured shall be obligated to pay by reason of the liability imposed upon the Assured by law or assumed by the Named Assured under contract or agreement, for damages direct or consequential, and expenses, all as more fully defined by the term "ultimate net loss", on account of personal injuries . . . arising out of any occurrence happening during the period of Insurance.

The policy described the term "Assured" as including the Diocese and "any official, trustee or employee of the [Diocese]," working "in any parishes, schools, cemeteries, and other agencies or directly connected organizations of the Diocese," and "acting within the scope of his duties as such . . . ." The policy excluded coverage for claims that alleged assault and battery:

THIS INSURANCE DOES NOT APPLY -

(a) to liability of *any Assured* for assault and battery committed by or at the direction of *such Assured* except liability for Personal Injury or Death resulting from any act alleged to be assault and battery for purpose of preventing injury to persons or damage to property[.]

On cross motions for summary judgment, the district court in relevant part granted summary judgment in favor of the Diocese on the assault and battery exclusion. Despite finding IFC's argument "plausible," the district court construed the exclusion as applying only to the offending

priest, concluding that "the best reading of the assault and battery clause is that 'such assured' means 'that insured'; *i.e.*, the assured who committed or directed the assault and battery." The district court therefore concluded that the exclusion did not foreclose coverage of the sexual abuse claims.

On appeal, as before the district court, IFC contends that, because the exclusion precludes coverage for "any assured"—and because "such assured" refers back to "any assured"—the assault and battery exclusion categorically excludes coverage for both the insured who committed the assault and battery as well as innocent co-insureds. We agree with IFC's reading of the exclusion.

Neither party disputes that the "Assured" under the policy covers not only the Diocese itself but also its priests and other employees working in the schools, parishes, agencies, and organizations directly connected to the Diocese. The question is the scope of the assault and battery exclusion, which uses the term "Assured" in two places: "any Assured," followed by "such Assured." Two principles guide our analysis. In interpreting the policy under Arizona law, the words "any" and "such" are to be given their ordinary meaning. *See Phelps Dodge Corp. v. Brown*, 540 P.2d 651, 653 (Ariz. 1975). We read these words in the context of the policy and do not rewrite its text. *See id.*; *see, e.g.*, *Barber v. Old Republic Life Ins. Co.*, 647 P.2d 1200, 1202 (Ariz. Ct. App. 1982) ("[T]he court must read the policy as a whole . . . with an appropriate regard for the context of the various component parts" and without "rewrit[ing] a policy . . . .").

We turn first to the plain meaning of the term "such Assured." As relevant here, the word "such" is defined as "of

a kind or character about to be indicated, suggested, or exemplified" or "having a quality already or just specified—used to avoid repetition of a descriptive term." *Webster's Third New International Dictionary* 2283 (2002). This definition indicates that "such Assured" in the exclusion carries the precise meaning as the assured "just specified." *See id*.; *see, e.g.*, *Spartan Petroleum Co. v. Federated Mut. Ins. Co.*, 162 F.3d 805, 809 (4th Cir. 1998) (holding that "such" property damaged referred back to the last mentioned "property damage" in the policy at issue). Here, the assured "just specified" is "any Assured"—those who allegedly committed the assault and battery as well as innocent co-insureds.

The Diocese maintains that the phrases "any Assured" and "such Assured" should be "presumed to have different meanings" and that IFC should have used language clearly communicating a limitation of coverage. Yet the Diocese's reading can only be reached by ignoring the plain meaning of the exclusion and jumping to the conclusion that the text is unclear. This effort to infuse ambiguity into an otherwise clear agreement is unavailing. As the Arizona Court of Appeals noted in *Brown v. United States Fidelity & Guaranty Company*, "when an exclusionary clause precludes recovery to 'any insured,' the term is not ambiguous and clearly encompasses all persons insured under the policy." 977 P.2d 807, 817 (Ariz. Ct. App. 1998). Reading the policy in context, the ordinary meaning provides that "such" refers back to "any," thus indicating that the exclusion applies to "any official, trustee or employee" of the Diocese.

The Diocese's argument also requires that we read additional language into the text. The only assured "just specified" in the exclusion is "any Assured." A narrower

specification, such as "the assured" or "that assured," is nowhere to be found. *See Sales v. State Farm Fire & Cas. Co.*, 849 F.2d 1383, 1385 (11th Cir. 1988) ("[U]nlike the phrase 'the insured,' the phrase 'any insured' unambiguously expresses a contractual intent to create joint obligations and to prohibit recovery by an innocent co-insured."). Nor does "any" mean "any one"; the exclusion expressly states "any *Assured*." We decline to cast aside the ordinary meaning of these terms in favor of words that are not included in the text. *See D.M.A.F.B. Fed. Credit Union v. Emp'rs. Mut. Liab. Ins. Co. of Wis.*, 396 P.2d 20, 23 (Ariz. 1964) (en banc) ("[T]he court will not pervert or do violence to the language used . . . [by] expand[ing] it beyound [*sic*] its plain and ordinary meaning or add[ing] something to the contract which the parties have not put there.").

The plain meaning of "such Assured" also comports with Arizona law. In *White*, an Arizona Court of Appeals joined a "majority" of Arizona courts in "constru[ing] the phrase 'any insured' in an exclusion" as "bar[ring] coverage for any claim attributable to the excludable acts of any insured . . . ." 65 P.3d at 456, 457; *see TIG Specialty Ins. Co. v. Pinkmonkey.com Inc.*, 375 F.3d 365, 372 (5th Cir. 2004) (holding that coverage was foreclosed because a policy exclusion "use[d] the specific term 'such Insured' to indicate the same insured as previously referred to," namely, "an Insured"). We too conclude that "if any one of the insureds [violates the exclusion], no other insureds can recover." *White*, 65 P.3d at 457 (alteration in original) (internal quotation marks omitted). Because we determine that the assault and battery exclusion applies to innocent co-insureds, we need not reach the remainder of the arguments raised on appeal.

We vacate the award of attorneys' fees and taxable costs and remand to the district court to determine whether IFC is the "successful party" under Arizona Revised Statute § 12-341.01, and if so, whether to award attorneys' fees. *See Med. Protective Co. v. Pang*, 740 F.3d 1279, 1280 (9th Cir. 2013). Costs on appeal shall be taxed against the appellee.

**REVERSED in part; VACATED and REMANDED in part.**

D.W. NELSON, Senior Circuit Judge, dissenting:

Because I believe that the plain language of the policy provision relied on by IFC excludes coverage only for those individuals who commit or direct an assault or battery, I would affirm the district court. I respectfully dissent.

I agree with the majority that this case turns on what exactly the plain meaning of the phrase "such Assured" refers back to. *See Sparks v. Republic Nat. Life Ins. Co.*, 647 P.2d 1127, 1132 (Ariz. 1982). In my view, however, the definition of "such" adopted and applied by the majority—"having a quality already or just specified—used to avoid repetition of a descriptive term[,]"—does not refer back to the class of "any Assured[s]" "just specified." Instead, "such" refers to those Assureds "having a *quality* already or just specified." Maj. Op. at 8 (emphasis added). Referring to the language of the exclusion, I see three possible qualities that "such" can refer to. First, the exclusion identifies "the liability of any Assured," so "such" may refer to those Assureds facing liability. Second, the exclusion references "any Assured," meaning that "such" might refer to the entire class of those

covered by the policy. Finally, the exclusion references "assault and battery committed by or at the direction of," which means that "such" might refer to those Assureds who committed or directed assault and battery. Of these three possible qualities, that which was "just specified" is the quality of having committed or directed assault and battery. Under the plain meaning of the word "such," I believe that the exclusion therefore only excludes coverage for assureds who committed or directed the assault or battery giving rise to liability.

Moreover, the word "quality," a word central to the definition of "such," is defined as a "peculiar or essential attribute" or "distinguishing attribute[.]" Webster's Ninth New Collegiate Dictionary 963 (9th ed. 1987). That is, a quality is an attribute used to differentiate individuals within a class, compare them to one another, or explain why one individual in a class or subset of a class is different from others within the wider class. Out of the three possible "qualities" in the exclusion, only two serve to differentiate from the wider class—the subset of assureds facing liability for assault and battery and the subset of assureds who committed or directed assault and battery. It is least likely that "such" refers back to "any Assured" because "any Assured" is the complete class of assureds, not a subset of the class identified by some unique characteristic. Nor is "any Assured" the quality "just specified." Finally, if "such" refers back to the entire class of "any Assured," the exclusion is redundant, but using such to refer to either of the other qualities gives meaning to the phrase "such Assured" that is consistent with the plain and common usage of the word "such."

Considering the plain and customary usage of the word "such," it is difficult to construct a hypothetical sentence that carries the same structure as the policy exclusion in this case where the word "such" refers back to the entire universe of individuals under consideration.  For example:

> The recess policy does not apply to any student acting up during Mr. Jones' class, such students are not entitled to recess.

Do all students in Mr. Jones' class lose recess privileges, or is it plain that only those students who act up lose recess privileges?  If such referred back to "that just specified," then "any Student," or the entire class of students who attended Mr. Jones' class, would lose recess privileges.  That is not the commonly understood meaning of the sentence.  It is also relevant that it is easy to construct[1] an exclusion that clearly applies to all assureds without ambiguity.  For example:

> This insurance does not apply to liability arising from an assault and battery committed or directed by any Assured.

Or:

> This insurance does not apply to liability of any Assured for assault and battery committed by or at the direction of any Assured.

---

[1] I recognize that the policy exclusion was drafted by Lloyd's of London and merely incorporated by IFC into the excess policy.  I also note that Lloyd's of London provided coverage for the underlying claims despite the existence of the exclusion.

Where these examples would unambiguously preclude coverage for the underlying claims, in order to reach the same result with the actual exclusion applicable here, "such Assured" must be, for all practical purposes, stripped from the policy language. I therefore do not think that the exclusion applies to the Diocese's vicarious liability for the torts of its employees.

Finally, although I believe the exclusion is inapplicable to the vicarious claims against the Diocese on its plain language, even if the exclusion is merely ambiguous it should be construed in favor of coverage. *Sparks*, 647 P.2d at 1132. Arizona law resolves ambiguities in favor of the insured if "after consideration of legislative goals, social policy, and examination of the transaction as a whole[,]" it is not clear how the policy applies to the facts of the particular case. *Empl'rs Mut. Cas. Co. v. DGG & CAR, Inc.*, 183 P.3d 513, 515 (Ariz. 2008) (quotation omitted). As the district court noted, both IFC's and the Diocese's interpretations of the assault and battery exclusion are at least plausible, and neither interpretation offends public policy as both exclude coverage for intentional torts. *See, e.g., Transamerica Ins. Grp. v. Meere*, 694 P.2d 181, 185–86 (Ariz. 1984). I therefore believe Arizona law requires interpreting the exclusion in favor of the Diocese.

Nothing in the authority cited by the majority compels a different result. *American Family Mutual Insurance Co. v. White* construed the following provision to preclude coverage for innocent co-insureds:

> Violation of Law. We will not cover bodily injury or property damage arising out of . . .

> violation of any criminal law for which any
> insured is convicted . . . .

65 P.3d 449, 452 (Ariz. Ct. App. 2003) (emphasis omitted). *White* relied on *Brown v. United States Fiduciary & Guaranty Corporation*, which interpreted a similar provision to also preclude coverage for innocent co-insureds:

> [The insurer] will not pay for loss or damage
> arising out of any acts committed:
>
>> a. By or at the direction of any "insured;"
>> and
>>
>> b. With the intent to cause a loss.

977 P.2d 807, 817(Ariz. Ct. App. 1998). The provisions interpreted in *White* and *Brown* use materially different language than the exclusion in the Diocese's policy. The precluding provisions from *White* and *Brown* use the term "any insured" once to unambiguously identify the class of insureds referenced, i.e. all of the individuals covered under the policy. Thus, the precluding provisions from *White* and *Brown* exclude coverage entirely based solely on the *type* of liability. But the exclusion in the Diocese's policy references assureds twice. First, "Assured" identifies the type of liability excluded—liability arising from acts of assault and battery committed by "any Assured." Second, "such Assureds" limits the exclusion to those whose acts gave rise to the liability.[2] Thus, while "any insured" clearly limits the

---

[2] The insurance policies in *White* and *Brown* were also family homeowner policies where the class of insureds was limited by the nature of the policies to the family members or residents in the home. *White*,

*type* of liability in simply constructed policy exclusions like those in *White* and *Brown*, the same reasoning does not apply to the exclusion in the Diocese's policy due to the additional "such Assured" language. And at the least, the exclusion in the Diocese's insurance policy has a significant ambiguity not present in the relatively simple exclusions analyzed in *White* and *Brown*.

I would hold that the policy exclusion does not apply in this case and would reach the parties' remaining arguments. I respectfully dissent.

---

65 P.3d at 451; *Brown*, 977 P.2d at 809. The Diocese's policy, however, is a general liability excess insurance policy issued to a huge organization that provides coverage for the Diocese itself and its employees over a number of parishes, schools, and other sub-units. Such a policy must account for direct and vicarious liability in its exclusions if it is to be sufficiently clear.