649 So.2d 912 (1995)
Willie BROWN, Appellant/Cross-Appellee,
v.
The TRAVELERS INSURANCE COMPANY, Appellee/Cross-Appellant.
Nos. 92-3149, 93-0923.
District Court of Appeal of Florida, Fourth District.
February 1, 1995.
*913 Basil E. Dalack of Saylor & Gwynn, West Palm Beach, for appellant/cross-appellee.
Hinda Klein of Conroy, Simberg & Lewis, P.A., Hollywood, for appellee/cross-appellant.

ON MOTIONS FOR REHEARING
FARMER, Judge.
We grant rehearing and substitute our previous opinion with the following.
This appeal brings us the question whether this homeowner's fire insurance carrier may avoid coverage under an intentional acts exclusion for a fire loss caused by an insane insured. We hold that the carrier may not.
The facts are straightforward and uncomplicated. It was undisputed that the insured himself set his own house on fire. His rage was sparked by his belief that his sister was plotting to steal his property. He was arrested, charged with arson, and upon being found initially incompetent was placed in a mental health institution. After a time, he was found fit to stand trial and released. A jury found him not guilty by reason of insanity on the criminal charges.
A few days after the blaze, Travelers was given notice of the loss and began processing a claim. While the insured was in the mental health facility, Travelers corresponded with him numerous times requesting that he complete its standard proof of loss and claim forms and that he submit to an oral examination under oath. After his release from the institution, he voluntarily appeared with counsel at a scheduled examination but refused to answer questions, asserting his fifth amendment privilege against self incrimination while the criminal charges were still pending.
Later he filed the present action seeking a declaratory judgment on the coverage question. In the first count of the complaint he sought a declaration that he was insane when he set the fire and that the delay in providing proof of loss caused by his condition did not adversely affect his right to recover for the losses from the fire. In the second count, he sought a protective order against an oral examination regarding the nature and origins of the fire, to the extent that answers to questions on these subjects could incriminate him in the then pending criminal case. Travelers counterclaimed for a declaratory judgment on the coverage issue.
This case was tried to a jury. At the close of the evidence, Travelers moved for a directed verdict on the basis that, even if the insured were found to be insane on the evening in question, the resulting loss from his conduct could not be considered accidental under Florida law. The court reserved ruling on that motion. The jury was given a special interrogatory verdict that asked: (1) whether the insured was insane when he set the fire; and (2) whether the insured failed to comply with the material terms of the policy resulting in prejudice to Travelers. The jury answered the first question "Yes,", and the second question "No."
Travelers filed a post trial motion for new trial and for judgment on its prior motion for directed verdict, arguing three grounds: (A) that the finding of insanity was not supported by evidence; (B) that the losses were the result of the insured's intentional acts; and (C) that the evidence established that the insured had failed to comply with conditions precedent to recovery under the policy. The trial court granted the motion in part, concluding that the intentional acts exclusion precluded coverage for the fire loss. We disagree and reverse.
We begin, of course, with the text of the policy, for that is where any decision as to the rights and liabilities of the parties to an insurance contract must find its base. The policy is divided into two sections; section I provides "Property Insurance," and section II provides "Liability Insurance." Under section I, there are four separate coverages, *914 entitled: "Coverage A  Dwelling", "Coverage B  Other Structures", "Coverage C  Personal Property", and "Coverage D  Additional Expenses".[1] Under section II, there are two separate coverages entitled "Coverage N  Personal Liability", and "Coverage O  Medical Payments".
There are two applicable insuring clauses under section I. The first pertinent provision states:
"Coverage A  Dwelling
"We cover the dwelling, including structures attached to the dwelling, on the insured premises. We also cover materials on or adjacent to the insured premises for use in building, altering or repairing the dwelling or other structures." [e.o.]
The second pertinent insuring clause states:
"Covered Perils
"We cover the property described under Coverages A, B and C for direct loss caused by any of the following perils, subject to the exclusions on page 10:
1. fire and lightning." [e.o.]
Beginning on page 10 there is the subheading, "Section I  General Exclusions", followed by a three-page listing of 18 expressed exclusions; there is no provision relating to intentional acts of the insured.
The insuring clause in section II states the following:
"Coverage N  Personal Liability
"We will pay damages for which the insured becomes legally responsible to others because of bodily injury or property damage to which this coverage applies." * * * [e.o.]
That is later succeeded by a subheading, providing in relevant part:
"Coverage N Exclusions
"This insurance does not cover certain situations.
1. It does not cover property damage to the insured's own property. * * *
2. It does not cover property damage to property rented to, occupied or used by, or in the care of the insured. However, it does cover property damage when caused by fire, smoke or explosion." [e.o.]
As in the case of section I, the coverage N exclusions do not contain any intentional acts provisions, however. Even later in this section, there is the following provision in a subheading accompanied in part by the following text:
"Section II  General Exclusions
"These exclusions apply to all coverages. They are in addition to those listed under Coverages N and O. Other exclusions or limitations may be found where they apply to a specific coverage. This insurance does not cover certain situations.
1. It does not cover bodily injury or property damage expected or intended by an insured." [e.o.]
Travelers contends, and the trial court found, that this last provision avoids the insured's claim.
Travelers argues that the words, "[t]hese exclusions apply to all coverages," mean that the intentional acts exclusion contained under that subheading in section II applies to all coverages contained in the policy, including those in section I; therefore the insured's fire loss is excluded from coverage under section I because it is one of the coverages embraced in the words "all coverages." This argument invites us to erase all context, exclude all headings and sub-headings, ignore contrary provisions, and limit our attention to only the words Travelers selects to make its case. We are simply unable to do what Travelers suggests.
Courts may not isolate a single sentence or group of words in an insurance policy and read the isolated part alone and apart from other provisions; the goal is to arrive at a reasonable interpretation of the entire policy *915 text to accomplish its stated meaning and purpose. The Praetorians v. Fisher, 89 So.2d 329 (Fla. 1956); James v. Gulf Life Ins. Co., 66 So.2d 62 (Fla. 1953). Such contracts are construed in accordance with the plain language of the policies as bargained for by the parties, and ambiguities are interpreted liberally in favor of the insured and strictly against the insurer who prepared the policy. Prudential Property & Casualty Ins. Co. v. Swindal, 622 So.2d 467 (Fla. 1993).
In a recent decision, which is otherwise distinguishable, the supreme court demonstrated how this rule applies to a policy divided into differing sections with differing coverages, and the argument is made that something contained in one section does not govern something in another; the court explained:
"Generally, courts will strive to interpret an automobile insurance policy based on the definitions contained within the policy. However, if the definition provided in one section of the policy is not applicable to the coverage at issue in another section, courts may be compelled to search elsewhere for a sensible and appropriate definition. In the instant case, the definition of motor vehicle that is included under the NoFault section of the policy is not relevant to the exclusions discussed in the Uninsured Motor Vehicle section of the policy.
"* * * `where a contract of insurance is entered into on a matter surrounded by statutory limitations and requirements, the parties are presumed to have entered into such agreement with reference to the statute, and the statutory provisions become a part of the contract.'"
Grant v. State Farm Fire and Casualty Co., 638 So.2d 936 (Fla. 1994) (quoting Standard Marine Insurance Co. v. Allyn, 333 So.2d 497 (Fla. 1st DCA 1976)). The subject of motor vehicle insurance is pervasively regulated by a welter of statutory provisions. It is thus understandable that such policies will be written under the inescapable omnipresence of these statutes. Where the policy uses a statutorily defined term, especially in the context of the subject of the particular statute, there is every reason to suppose that the carrier has employed the statutory definition.
There is, of course, no similar affecting force in this case. This is an ordinary homeowners property insurance, where the carrier had a freer hand to write its coverages around undesirable risks and to set out clear exclusions. Plainly Travelers knew how to exclude intentional acts from its fire coverage for the dwelling, as the exclusion from its liability coverage so ably demonstrates. It also knew how to exclude the insured's own personal property from certain risks  accepting this risk, discarding that  as again the liability exclusions show.
The fact that Travelers did not incorporate either one of these provisions into its section I coverages or exclusions is the best evidence of its clearly stated purpose not to exclude intentional acts from its fire coverage on the dwelling. For, when a carrier has such freedom over the coverages it will insure, the nonpresence of expressed intentions on discrete subjects should ordinarily be taken as purposeful noninclusion of the intention. The absence of the expression should mean the absence of the intent. Thus the failure to write an exclusion from coverage for fires caused by an insane person should be understood as a purposeful omission.
We distinguish the very recent decision of our supreme court in Prasad v. Allstate Insurance Co., 644 So.2d 992 (Fla. 1994), in which the court upheld an intentional acts exclusion to bar recovery for the acts of an insane person. In that case, however, unlike the present one, the exclusion applied to the same coverage under which the claim was made. The claimant was a guest in the home for which the policy provided homeowner's coverage. She was attacked by the insane child of the homeowner and suffered injuries. There was no doubt that the claim arose under the liability section of the policy where the intentional acts exclusion was found. As we have shown above, in this case the coverage was under section I providing general homeowners fire coverage, while the exclusion was applicable only to section II which provided general liability coverage.
*916 REVERSED AND REMANDED WITH DIRECTIONS.
KLEIN, J., and HARRY LEE ANSTEAD, Associate Judge, concur.
NOTES
[1] There are 11 additional property insurance optional coverages available under section I, entitled Coverages E (Earthquake), F (Forgery), G (Money), H (Securities), I (Fire Department Service Charge), J (Extended Theft), M (Property At Other Locations), U (Inflation Coverage), V (Silverware), W (Jewelry and Furs), and Y (Personal Property Replacement). Under Section II, there are 5 additional optional coverages entitled Coverages P (Office, School or Studio), Q (Watercraft), R (Business Pursuits), S (Snowmobiles), and T (Personal Injury). The insured in this case opted for Coverages J and T.