707 So.2d 1185 (1998)
USAA CASUALTY INSURANCE COMPANY, a foreign insurance company authorized to do business in the State of Florida, Appellant,
v.
Lawrence GORDON, Appellee.
No. 97-1782.
District Court of Appeal of Florida, Fourth District.
March 25, 1998.
Gerald T. Albrecht, Yoniece M. Dixon and Guy E. Burnette, Jr., of Butler, Burnette & Pappas, Tampa, for appellant.
*1186 Julie H. Littky-Rubin of Lytal, Reiter, Clark, Sharpe, Roca, Fountain & Williams, West Palm Beach, for appellee.
STEVENSON, Judge.
USAA appeals a declaratory judgment determining that its homeowner's insurance policy contains an ambiguity which, when read in favor of the appellee, Lawrence Gordon, entitles him to $17,319.52 in insurance proceeds. We reverse, as we find that the policy unambiguously excludes coverage in this case.
Appellee and his estranged wife are the named insureds under a homeowner's policy issued by USAA. After the wife intentionally damaged the insured residence and insured personal property therein to the tune of $34,639.13, appellee, who played no part in his wife's rampage, presented USAA with a claim for insurance proceeds. USAA denied the claim pursuant to a policy exclusion for intentional losses. Appellee then filed this action, seeking a declaratory judgment that USAA is obligated under its policy to provide coverage. The trial court granted appellee's motion for summary judgment, holding that USAA is required to reimburse appellee $17,319.52, his "one-half insurable interest" of the damaged property.

USAA's policy
USAA's policy provides two distinct types of coverage: Section I of the policy describes the "Property Coverages," and Section II describes the "Liability Coverages." Under Section I, insureds are covered for damage to their insured property caused by various natural causes, deterioration, or vandalism. Under Section II, USAA is required to defend and indemnify an insured who is sued by a third party for bodily injury or property damage. Section I and Section II of the policy each contain their own "exclusions" and "conditions." A final section of the policy sets forth additional "conditions" that expressly pertain to both Sections I and II.
In this case, appellee's claim arose under Section I, as he was not seeking indemnification for a third-party claim, but seeking reimbursement for his damaged property. USAA denied coverage pursuant to an "intentional loss" exclusion in Section I, which provides:
We do not insure for loss directly or indirectly caused by any of the following ...
h. Intentional Loss, meaning any loss arising out of any act committed:
(1) by or at the direction of any insured; and
(2) with the intent to cause loss.
(emphasis added).
Appellee's wife was a named insured; thus, exclusion (h) appears to bar coverage. However, the trial court held that a "severability" condition from Section IIthe liability insurance portion of the policyactually applied to the entire insurance contract, and that when the severability clause is read in conjunction with exclusion (h) from Section I, an ambiguity arises which, when construed in appellee's favor, entitles him to coverage. The severability clause provides:
Severability of Insurance. This insurance applies separately to each insured. This condition will not increase our limit of liability for any one occurrence.
There is no similar severability provision in the conditions of Section I or in the section providing additional conditions applicable to both Sections I and II. In finding the Section-II severability clause universally applicable, the trial court found that the clause, which purports to apply to "this insurance," did not sufficiently limit itself to Section II "with the use of words such as `this coverage' or `this action.'"

"Innocent insureds"
We initially note that the intentional loss exclusion, unaffected by any severability clause, would clearly exclude coverage in this case. Whether an "innocent insured," like appellee, may collect insurance proceeds for damage unilaterally caused by a co-insured depends on whether the insurance policy provides "joint" or "several" coverage. See Overton v. Progressive Ins. Co., 585 So.2d 445 (Fla. 4th DCA 1991). In making this determination, we must look to the language of the policy. Id. at 447. We have no trouble concluding that exclusion (h), which excludes coverage for damage caused by "any insured," unambiguously results in joint property coverage in this case. See Sales v. State Farm Fire & Cas. Co., 849 F.2d 1383, *1187 1385 (11th Cir.1988)(explaining that an exclusion based on the conduct of "any insured" "unambiguously expresses a contractual intent to create joint obligations and to prohibit recovery by an innocent coinsured").

Applicability of the severability clause
We hold that the trial court erred in determining that the severability clause of Section II creates an ambiguity in the scope of Section I coverage, as our de novo analysis of the policy convinces us that the severability clause does not apply to Section I. Sections I and II of the policy represent two distinct types of insurance coverage, and each has its own set of exclusions and conditions which are physically set apart from each other in the policy. One of the conditions in Section II is the severability clause, and there is no analogous clause anywhere in the policy pertaining to Section I. To apply a condition found exclusively in Section II to Section I coverage ignores the structure of the policy and takes the condition out of context.
In Brown v. Travelers Insurance Co., 649 So.2d 912 (Fla. 4th DCA 1995), which involved a policy structured much like the instant onewith "Property Insurance" described in Section I and "Liability Insurance" described in Section IIthis court refused to apply an intentional acts exclusion from liability coverage to limit the property coverage, as urged by the insurance company in that case. Even though the Section-II exclusion broadly stated that it applied "to all coverages," this court refused to apply it to Section I, explaining,
This argument invites us to erase all context, exclude all headings and sub-headings, ignore all contrary provisions and limit our attention to only those words Travelers selects to make its case. We are simply unable to do what Travelers suggests.
Id. at 914.
Appellee submits that the conclusion reached in Brownthat is, that the insurance company could not apply an exclusion from liability coverage to property coverageis the result of strictly construing the policy in that case against the insurance company. Thus, he argues, Brown does not preclude an insured like himself from transplanting provisions between sections when such a construction is beneficial to the insured. We disagree with appellee's reading of Brown. An insurance policy is properly construed against the insurer only if the language of the policy is deemed to be ambiguous. See State Farm Fire & Cas. Ins. Co. v. Deni Assocs. of Fla., Inc., 678 So.2d 397, 400 (Fla. 4th DCA 1996), aff'd, 23 Fla. L. Weekly S59, ___ So.2d ___, 1998 WL 29822 (Fla. Jan 29, 1998). On the other hand, if the policy is unambiguous, "there is no occasion for the Court to construe it," and the plain meaning governs. Id. (quoting Rigel v. National Cas. Co., 76 So.2d 285, 286 (Fla.1954)). As we read Brown, the court found no ambiguity to construe; on the contrary, the court held that the structure of the policy and the absence of an intentional acts exclusion in the dispositive section of the policy manifested the "clearly stated purpose" to not exclude intentional acts from property insurance coverage. 649 So.2d at 915. Likewise, we find that the bifurcated structure of the instant policy and the conspicuous absence of a severability clause in Section I unambiguously reflects its purposeful omission from that section.
Accordingly, we hold that the intentional loss exclusion of Section I is unaffected by the severability clause of Section II, and the plain language of the exclusion properly precludes appellee's recovery in this case.
REVERSED.
GLICKSTEIN and SHAHOOD, JJ., concur.