968 So.2d 602 (2007)
Taisyer KATTOUM and Saadia Kattoum, Appellants,
v.
NEW HAMPSHIRE INDEMNITY COMPANY, Appellee.
No. 2D05-3526.
District Court of Appeal of Florida, Second District.
September 28, 2007.
Rehearing Denied November 5, 2007.
*603 Charles P. Schropp of Schropp, Buell & Elligett, P.A., Tampa, and James L. Dowling of Law Offices of Berger & Dowling, Palm Harbor, for Appellants.
Peter S. Roumbos and Stuart C. Poage of Young, Bill, Fugett & Roumbos, PA., Pensacola, for Appellee.
KELLY, Judge.
Taisyer Kattoum and his wife, Saadia Kattoum, appeal the final declaratory judgment in favor of New Hampshire Indemnity Company (NHIC) holding that the Kattoums' claims were excluded from coverage under their NHIC policy because their loss was the result of an intentional act of Mrs. Kattoum. The Kattoums argue that the trial court erred in construing the policy and that the intentional acts exclusion in the NHIC policy did not exclude an "innocent co-insured" from coverage based on the intentional misconduct of another insured. We agree that the trial court erred in construing the Kattoums' insurance policy and, accordingly, we reverse.
Florida has long recognized that an insurer is not liable to indemnify an insured for losses directly caused by the fraud or misconduct of that insured. Carter v. Carter, 88 So.2d 153 (Fla.1956). However, because insurance policies frequently provide coverage for more than one insured, the question arises as to whether the policy is intended to insure all named insureds jointly or whether the coverage is severable so as to provide separate coverage of the respective interests of two or more joint owners and co-insureds. If the policy provides joint coverage, the fraud or misconduct of one insured can be imputed to an "innocent co-insured." See Auto-Owners Ins. Co. v. Eddinger, 366 So.2d 123-24 (Fla. 2d DCA 1979). However, Florida's courts have held that the intentional misconduct of one insured will only be imputed to an innocent co-insured where the insurance policy contains a clear statement that the misconduct of one insured abrogates the coverage of all insureds. See id.
The dispute between the Kattoums and NHIC had its genesis in an argument between Mr. and Mrs. Kattoum. After the argument, Mrs. Kattoum crashed Mr. Kattoum's Lincoln Town Car into the wall of their family-operated car wash. She claimed it was an accident; however, a police investigation of the incident concluded that it was intentional. Federated Mutual Insurance Company, which insured the building, paid the owner of the building for the damage and then sought reimbursement from the Kattoums. The Kattoums in turn sought coverage from NHIC under the liability portion of their automobile policy. Mr. Kattoum also made a claim under the collision coverage portion of the policy for the damage to his car. NHIC rejected the Kattoums' claims and filed a complaint for declaratory judgment citing a provision in its policy that NHIC claimed excluded coverage for damage intentionally caused by "any insured." Mr. Kattoum countered that he was an innocent co-insured and therefore the intentional conduct of his wife could not be attributed to him.
NHIC moved for summary judgment on the issue of whether Mr. Kattoum could raise the "innocent co-insured" defense. NHIC argued that the use of the words "any insured" in the intentional acts exclusion of its policy meant that the policy *604 provided joint coverage rather than several coverage and thus, Mrs. Kattoum's actions were imputed to her husband, barring him from claiming innocent co-insured status. The trial court agreed and allowed the case to go to trial on the issue of whether Mrs. Kattoum's collision was an intentional act. The jury concluded that it was, and the trial court entered judgment for NHIC. After the trial, Mr. Kattoum moved for summary judgment on his counterclaim for damage to his Town Car. He argued that the intentional acts exclusion did not apply to the collision coverage portion of the policy. The trial court rejected this argument and ruled in favor of NHIC based on its conclusion that the entire NHIC policy was subject to the intentional acts exclusion.
In this appeal the Kattoums argue that the trial court erred in construing the NHIC insurance policy. The interpretation of an insurance contract is a question of law; accordingly, we review de novo the trial court's rulings. Biltmore Constr. Co. v. Owners Ins. Co., 842 So.2d 947, 949 (Fla. 2d DCA 2003). Part A of the Kattoums' policy provides liability coverage. The "exclusions" paragraph of Part A states, "[w]e do not provide Liability Coverage for any `insured' . . . [w]ho intentionally causes . . . `property damage.'" This language plainly excludes liability coverage for any insured who has intentionally caused property damage. It equally plainly does not take away the coverage of an innocent co-insured who did not intentionally cause that damage. This exclusion carefully limits its scope to insureds who intentionally cause damage leaving intact coverage for those insureds who did not participate in the intentional misconduct. See Sales v. State Farm Fire & Cas. Co., 849 F.2d 1383, 1386, n. 2 (11th Cir.1988); Haynes v. Hanover Ins. Co., 783 F.2d 136, 138 (8th Cir.1986); Montgomery Mut. Ins. Co. v. Dyer, 170 F.Supp.2d 618, 623-26 (W.D.Va.2001); Fuston v. Nat'l Mut. Ins. Co., 440 N.E.2d 751, 751-52, 754 (Ind.App.1982); K & W Builders, Inc. v. Merch. & Bus. Men's Mut. Ins. Co., 255 Va. 5, 495 S.E.2d 473, 478 (1998); see also Marvin L. Karp, Arson and the Innocent Co-Insured, 22-SPG Brief 8 (1993) (noting that where a policy states that the insurance company does "not provide coverage for any insured who has intentionally concealed or misrepresented any material fact . . . [t]he meaning of [the] language (whether intended or not) could not be more clear: The only insured who is barred by the fraud is the insured who actually did the concealing or misrepresenting"); Richard K. O'Donnell, Imputation of Fraud and Bad Faith: The Role of the Public Adjuster, Co-Insured and Independent Adjuster, 22 Tort & Ins. L.J. 662, 686 (1987) (discussing the fraud clause appearing in the 7-77 edition of the ISO homeowner's forms which states: "We do not provide coverage for any insured who has intentionally concealed or misrepresented any material fact . . ." and noting that "[t]his `insured who' language unambiguously restricts the recovery bar to the guilty insured.").
The cases NHIC relies on to support its argument that the use of the words "any insured" unambiguously indicates that the policy provides joint coverage rather than several coverage are materially distinguishable because of the context in which the words "any insured" were used in the policies at issue in those cases. For example, in USAA Casualty Insurance Co. v. Gordon, 707 So.2d 1185, 1186 (Fla. 4th DCA 1998), the policy contained an exclusion section that stated that the company did not insure for, among other things, *605 "Intentional Loss." It defined intentional loss as "meaning any loss arising out of any act committed . . . by or at the direction of any insured." In that context, the court held that the words "any insured" unambiguously indicated that the policy provided joint coverage because intentional damage was excluded when it was caused by "any insured." In stating that the phrase "any insured" unambiguously indicated joint coverage, the court was making a comparison to the phrase "the insured," a phrase that would be ambiguous in this context because it would not clearly identify which insured's intentional acts were excluded. See id. at 1186-87 (citing Sales, 849 F.2d at 1385, which explains that compared to an exclusion based on the conduct of "the insured," an exclusion substituting the phrase "any insured" unambiguously expresses a contractual intent to create joint obligations and to prohibit recovery by an innocent coinsured); see also State Farm Fire & Cas. Ins. Co. v. Kane, 715 F.Supp. 1558, 1561 (S.D.Fla.1989). Accordingly, we reject NHIC's contention that the phrase "any insured" always equates to joint coverage regardless of the context in which it is used.
The focus in NHIC's exclusion is squarely on the person responsible for the intentional act, not on the resulting loss. NHIC's policy does not exclude coverage for losses intentionally caused by "any insured," it excludes from coverage "any insured who" intentionally causes bodily injury or property damage. The clause excludes a particular insured, not a particular loss, and the policy identifies which insured is excluded  it is the insured "who intentionally causes" a loss.[1] Because this language unambiguously restricts the exclusion to the "guilty" insured, Mr. Kattoum is not excluded from coverage under Part A of the policy.
Mr. Kattoum also sought reimbursement for the damage to his car. Part D of the NHIC policy, titled "Coverage for Damage to Your Auto," states that NHIC "will pay for direct and accidental loss to `your covered auto.'" The trial court apparently concluded that the intentional acts exclusion in Part A of the policy rendered the entire policy joint. The trial court's conclusion is flawed in two respects. First, as explained above, the trial court erred in construing the exclusion and therefore failed to recognize that the coverage provided by the liability portion of the NHIC policy was several, not joint. Second, even if the trial court's assessment of the exclusion had been correct, it erred in applying the exclusion contained in Part A of the policy to Part D. See Brown v. Travelers Ins. Co., 649 So.2d 912 (Fla. 4th DCA 1995) (holding that an intentional acts exclusion appearing only in the liability section could not be made applicable to the separate property damage section in the absence of language in the policy indicating that those provisions were incorporated into other sections of the policy). Part D of NHIC's policy did not include an intentional acts exclusion, nor did Part D incorporate the exclusion in Part A. Accordingly, *606 Mr. Kattoum was not excluded from coverage under Part D of the policy.
Reversed and remanded.
LEVENS, WILLIAM P., Associate Judge, Concurs.
CASANUEVA, J., Concurs specially with an opinion in which LEVENS, WILLIAM P., Associate Judge, Concurs.
CASANUEVA, J., Specially concurring.
This case presents two issues pertaining to the construction of a contract for an insurance policy. As for the discussion regarding Part A of the policy, I concur with the majority that the exclusion language applies to the actor who intentionally caused the loss, not to the resulting loss itself. I also concur that an "any insured" exclusion exacts a different interpretation than an "any insured who" exclusion. If the exclusion was simply "any insured," I would read it to exclude coverage for all insureds because it applied to at least one of the insureds. However, NHIC's liability coverage exclusion language of "any insured" contains the additional word "who." I find the word "who" serves to limit and restrict the more general "any insured" exclusion. Used thusly, it specifically excludes any insured who intentionally causes bodily injury or property damage.
It is not disputed that Mr. Kattoum was an insured at the time of the loss. It is also not disputed that Mr. Kattoum did not cause the loss. Because the policy language focuses on the actor, not the loss, and based on the clear evidence that Mr. Kattoum was not the "any insured who" intentionally caused the loss, I fully concur with the majority that Mr. Kattoum is not excluded from coverage under Part A of the policy.
I also concur with the majority opinion's analysis of Part D of the insurance contract entitled "Coverage for Damage to Your Auto."
NOTES
[1] The grammatical function of "who" in this sentence is to introduce the restrictive relative clause that modifies "any insured." As such, it provides an integral part of the meaning of the main clause by restricting the antecedent by clarifying which insured is meant. See, e.g., The American Heritage Dictionary of the English Language (4th ed. 2000); Rodney Huddleston and Geoffrey K. Pullum, The Cambridge Grammar of the English Language, (Cambridge University Press 2002); A.J.J. Thomson & A.V. Martinet, A Practical English Grammar, (4th ed., Oxford University Press 1986).