[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 19, 2010
JOHN LEY
CLERK

No. 10-10608
Non-Argument Calendar
_____

D.C. Docket No. 3:08-cv-00586-HLA-MCR

THE BURLINGTON INSURANCE COMPANY,

Plaintiff - Appellee,

versus

INDUSTRIAL STEEL FABRICATORS, INC.,
a Florida corporation, et al.,

Defendants,

GEORGES BAHRI,
as Personal Representative of the Estate of Michel Abi Nasr, deceased,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(July 19, 2010)

Before TJOFLAT, MARTIN and FAY, Circuit Judges.

PER CURIAM:

On April 18, 2006, Michel Abi Nasr was killed in a construction accident when a 1,200 pound steel beam fell on his head. His estate subsequently filed suit against Industrial Steel Fabricators, Inc. ("ISF") and its subcontractor A&K Erectors, Inc. ("A&K") for negligence. Pursuant to ISF's general liability insurance policy, the Burlington Insurance Company ("Burlington") is indemnifying and defending ISF in that lawsuit to the extent of ISF's coverage under the policy.

The parties dispute the policy's coverage limit for Nasr's accident. Burlington believes that the limit was reduced from $1 million to $25,000 because ISF failed to require A&K to obtain, maintain, and submit certified proof of its own insurance policy with coverage and limits of liability at least equal to those in ISF's policy with Burlington. To obtain a declaratory judgment regarding the coverage limit, Burlington initiated a separate suit against ISF, A&K, and the estate. Each of the parties in that case, except for A&K against whom a default judgment was entered, moved for summary judgment. The district court granted summary judgment in favor of Burlington, a decision appealed only by Nasr's estate. After thorough review, we AFFIRM the district court's ruling.

2

I.

We review *de novo* a district court's grant of summary judgment, applying the same legal standards that governed the district court's analysis. Penley v. Eslinger, 605 F.3d 843, 848 (11th Cir. 2010). In doing so, we would normally examine the record to determine whether a genuine issue of material fact exists, but here the parties stipulated that there are no triable issues of fact and waived their right to a jury trial. Therefore, we need only determine whether the district court properly entered judgment in favor of Burlington based on its interpretation of the ISF insurance policy. See Hercules Bumpers, Inc. v. First State Ins. Co., 863 F.2d 839, 841 (11th Cir. 1989).

This declaratory judgment action was brought on the basis of diversity jurisdiction under 28 U.S.C. § 1332. The district court implicitly determined that Florida law controls Burlington's legal obligations under its insurance policies, and the parties have not objected to that determination on appeal. Accordingly, we apply Florida law in analyzing the policy's terms. See LaTorre v. Conn. Mut. Life Ins. Co., 38 F.3d 538, 540 (11th Cir. 1994) ("Florida adheres to the traditional rule that the legal effects of terms of the insurance policy and rights and obligations of persons insured thereunder are to be determined by the law of the

3

state where the policy was issued.") (citing <u>Wilson v. Ins. Co. of N. Am.</u>, 415 So. 2d 754, 755 (Fla. Dist. Ct. App. 1982); <u>see also</u> <u>Cavic v. Grand Bahama Dev. Co.</u>, 701 F.2d 879, 882 (11th Cir. 1983) ("Because the parties did not raise any conflict of laws issue in the district court and do not raise it on appeal, under applicable conflict of laws principles the law of the forum ([Florida]) would govern the substantive issues due to the absence of facts justifying the application of the law of some other jurisdiction." (alteration in original) (quoting <u>Montgomery Ward & Co. v. Pac. Indem. Co.</u>, 557 F.2d 51, 58 n.11 (3rd Cir. 1977)).

## II.

Under Florida law, "insurance contracts must be construed in accordance with the plain language of the policy." <u>Swire Pac. Holdings, Inc. v. Zurich Ins. Co.</u>, 845 So. 2d 161, 165 (Fla. 2003). But if the relevant policy language is ambiguous then extrinsic evidence of the parties' intentions may be introduced to explain the ambiguity. <u>Reinman, Inc. v. Preferred Mut. Ins. Co.</u>, 513 So. 2d 788, 788 (Fla. Dist. Ct. App. 1987). Ambiguity exists if the policy language is "susceptible to more than one reasonable interpretation," such as "one providing coverage and the another limiting coverage." <u>Auto-Owners Ins. Co. v. Anderson</u>, 756 So. 2d 29, 34 (Fla. 2000). In making that determination, the policy as a whole must be examined and ordinary rules of contract construction apply. <u>Swire</u>, 845

So. 2d at 166. An ambiguous provision, particularly a provision that excludes or limits coverage, is liberally construed in favor of the insured and strictly against the insurer who prepared the policy in order to achieve the greatest possible coverage. Flores v. Allstate Ins. Co., 819 So. 2d 740, 744 (Fla. 2002).

A "warranty endorsement" in the insurance policy underwritten by Burlington is the sole focus of the parties' dispute. That endorsement reduces ISF's coverage from $1 million to $25,000 per occurrence if ISF breaches two warranties regarding contractors:

WARRANTY - INSURANCE FOR LEGAL LIABILITY
(CONTRACTORS)

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

1. In consideration of our agreeing to to [sic] issue this policy, you agree, covenant and warrant that you require without exception that those who undertake a job for or in your behalf obtain and maintain insurance, during the duration of the job, for legal liability arising out of their operations with coverage and limits of liability equal to or greater than those provided by this policy.

2. You further warrant that you obtain [certified proof or the equivalent] of such insurance prior to commencement of any work performed for or in your behalf.

3. For any "occurrence" arising out of your failure to comply with the warranties in Paragraph 1 and 2 above the limits of insurance

5

[are reduced as set forth in the schedule]. These limits are inclusive of and are not in addition to the limits being replaced.

The policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Not surprisingly, the parties agree that the "occurrence" in this case is Nasr's death. They also agree that A&K, as ISF's subcontractor, did not have the requisite insurance policy and that ISF never obtained certified proof of insurance from A&K.

In construing paragraph three of the warranty endorsement, Nasr's estate urges us to strictly adhere to the policy's explicit language in such a way that strains logic. It argues that the "arising out of" language requires Nasr's death to be causally connected to ISF's breach of the two warranties. Under this interpretation, the coverage limitation would not apply because ISF's failure to require A&K to obtain, maintain, and submit certified proof of the required insurance policy did not cause Nasr's death. The estate acknowledges that the endorsement makes little sense given this interpretation but urges that Burlington should have brought a reformation action if it wanted to avoid the effect of the provision's "plain, easily understandable English."

We agree with the district court and Burlington that the estate's interpretation is not reasonable. The limitation provision follows the two warranties and thus must be read in conjunction with them. No reasonable interpretation of all three provisions in context would require a *causal* connection between the occurrence and the breach of warranties. To hold otherwise would have us accept the illogical proposition that fatal accidents could result from ISF's failure to ensure that its contractors had the requisite insurance. Rather, the only reasonable interpretation of the endorsement is that the uninsured (or underinsured) subcontractor employed by ISF, here A&K, must somehow be implicated in the accident or occurrence.

Because we find the contractual language in paragraph three susceptible to only one reasonable interpretation, that paragraph is not ambiguous and we need not consider any extrinsic evidence. See Acceleration Nat'l Serv. Corp. v. Brickell Fin. Servs. Motor Club, Inc., 541 So. 2d 738, 739 (Fla. Dist. Ct. App. 1989) ("Before extrinsic matters may be considered by a court in interpreting a contract, the words used on the face of the contract must be ambiguous or unclear."). But even if we were inclined to do so, our conclusion would remain unchanged. Not surprisingly, the estate has not set forth a single piece of evidence

7

suggesting that ISF and Burlington intended the reduction in coverage to apply only if the accident was somehow *causally* connected to a breach of the warranties. Notably, while ISF's general manager perhaps did not appreciate the effect of the warranty endorsement when he signed an identical version in the previous year's policy, he has admitted that the language has "become clear as rain" in that there is "[n]o ambiguity at all." Without any evidence refuting the inescapable conclusion that even ISF's general manager ultimately drew, a reasonable trier of fact surely could not conclude otherwise.

The estate also argues, in the alternative, that there should not be any reduction in coverage because ISF did not breach the warranties in paragraphs one and two. To support its argument, the estate urges that the warranties should not be construed as creating prospective obligations but rather as only representations of present facts given that they are written in the present, not future, tense. Under this interpretation, a breach of the warranties could only occur if ISF, at the time the policy was "applied for and issued," did not have a standard operating procedure requiring its contractors to obtain and submit proof of the requisite insurance coverage. Because ISF had such a procedure at that time, the estate says that ISF's

inadvertent failure to follow that procedure with respect to A&K following the underwriting of ISF's insurance contract is irrelevant and could not have resulted in a breach of the warranties.

The estate's argument implores us to ignore all context and limit our attention to only the words it selects to make its case, namely the ones written in present tense. Courts, however, "may not isolate a single sentence or group of words in an insurance policy and read the isolated part alone and apart from other provisions; the goal is to arrive at a reasonable interpretation of the entire policy to accomplish its stated meaning and purpose." Brown v. Travelers Ins. Co., 649 So. 2d 912, 914–95 (Fla. Dist. Ct. App. 1995).

When reading the warranties in context, they clearly create prospective obligations rather than represent existing facts. Burlington's obligation to provide $1 million in coverage without any reduction was conditional on ISF requiring its subcontractors to have the requisite insurance and obtaining proof of that coverage "prior to commencement of any work." If the existence of a standard operating procedure to this effect when the policy was issued was sufficient, there would be no need for the policy to spell out different coverage limits depending on whether ISF

9

complied with the warranties in the context of a particular accident. In other words, the warranties had to be prospective obligations or else the language in paragraph three regarding "occurrences" would be superfluous. Under the estate's interpretation, the reduction in coverage would apply if the warranties were untrue when the policy was issued regardless of what particular occurrence later gave rise to coverage. That interpretation is unreasonable in light of the endorsement as a whole. We therefore reject the estate's argument that the provision is ambiguous so as to require liberal construction of the provision in favor of the insured.[1]

For these reasons, we AFFIRM the district court's order granting Burlington's motion for summary judgment.

---

[1] The estate urges us to consider that ISF's policy is a renewal from the previous year and in that year ISF's policy contained not only the same warranty endorsement but also a conflicting endorsement called the "Contractors Special Conditions." That endorsement contained virtually the same provisions as the warranty endorsement but used the future tense and did not reduce coverage in the event of a breach of the provisions. The only way to resolve this conflict, the estate says, is to interpret the warranty endorsement as only requiring ISF to have a standard operating procedure when the policy is applied for and issued. The estate urges us to give the warranty endorsement in the policy here the same meaning.

Even if we were inclined to consider this extrinsic evidence, the estate's resolution of the conflict does not work a reasonable reconciliation. As discussed above, it is unreasonable to construe the warranty endorsement as creating no prospective obligations even though it fails to use the future tense. In any event, the Contractors Special Conditions endorsement is irrelevant given that it has been removed from the policy at issue. See Hercules Bumpers, Inc., 863 F.2d at 842 ("It is a basic tenet of insurance law that each time an insurance contract is renewed, a separate and distinct policy comes into existence.").