[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-14716
_____

D.C. Docket No. 1:13-cv-21653-KMW

HERBERT STETTIN,
Trustee,

Plaintiff,

ROBERT C. FURR,
Trustee,
MICHAEL I. GOLDBERG,
not individually, but as Chapter 11 Trustee of the estate of the debtor,
Rothstein Rosenfeldt Alder, P.A.,
BAYON INCOME FUND, LP., et al.,

Plaintiffs - Appellants,

versus

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA,
TWIN CITY FIRE INSURANCE COMPANY,

Defendants - Appellees,

AONRISK SERVICES INC. OF MASSACHUSETTS, et al.,

Defendants.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(July 5, 2017)

Before JORDAN and JULIE CARNES, Circuit Judges, and SCHLESINGER,[*] District Judge.

JORDAN, Circuit Judge:

This appeal is another remnant of the Ponzi scheme orchestrated by Scott Rothstein through his law firm, Rothstein Rosenfeldt Adler. *See, e.g.*, *S.E.C. v. Levin*, 849 F.3d 995 (11th Cir. 2017); *Coquina Invs. v. TD Bank, N.A.*, 760 F.3d 1300 (11th Cir. 2014); *In re Rothstein, Rosenfeldt, Adler, P.A.*, 717 F.3d 1205 (11th Cir. 2013). It arises out of litigation based on the alleged conduct of certain executives of Gibraltar Private Bank and Trust Company, at which RRA maintained accounts.

Gibraltar and some of its executives were named as defendants in numerous suits seeking to recover for losses caused by Mr. Rothstein's scheme. They requested that their insurance carriers, National Union Fire Insurance Company of Pittsburgh and Twin City Fire Insurance Company, extend coverage under

_____

[*] Honorable Harvey E. Schlesinger, United States District Judge for the Middle District of Florida, sitting by designation.

2

Gibraltar's executive and organization liability insurance policies towards a joint settlement of the claims.

When National Union and Twin City denied coverage, Gibraltar and its executives began settlement discussions without the insurance companies. The parties eventually reached a settlement, which included Gibraltar and the executives assigning their policy rights to the bankruptcy trustees of RRA and of other entities that lost money in the Ponzi scheme.

After the assignment, the trustees again unsuccessfully demanded coverage. The trustees then filed suit, asserting breach of contract and bad faith claims. National Union and Twin City moved to dismiss the action, arguing that coverage was barred by a "professional services exclusion" found in each of the policies. The district court agreed, and granted the insurers' motions. The trustees now appeal.

The National Union policy is the primary policy, while the Twin City policy is an excess policy that follows the primary policy's relevant provisions. The terms of the policies are relatively straightforward. The policies provide for coverage for "the Loss of any Insured Person arising from a Claim made against such Insured Person for any Wrongful Act of such Insured Person, except when and to the extent the Organization has indemnified such an Insured Person." D.E.

3

18-1 at 7.  The policies also exempt "professional services" from coverage.  The professional services exclusion reads as follows:

> The Insurer shall not be liable to make any payment for Loss in connection with any Claim made against any Insured alleging, arising out of, based upon, or attributable to the Organization's or any Insured's performance of or failure to perform professional services for others, or any act(s), error(s) or omission(s) relating thereto.

*Id*. at 37.

The district court reasoned that the plain language of the exclusion barred coverage because some of the insured executives at Gibraltar provided professional banking services directly to RRA.  *See* D.E. 80 at 18 ("A plain reading of the Professional Services Exclusion demonstrates that it bars coverage for any Claim made against any Insured arising out of any Insured's performance or failure to perform professional services for others.").  *See generally Kattoum v. New Hampshire Indem. Co.*, 968 So. 2d 602, 603 (Fla. 2d DCA 2007) ("If the policy provides joint coverage, the fraud or misconduct of one insured can be imputed to an 'innocent co-insured.'") (citation omitted).

The trustees ask that we reverse.  They contend that the exclusion should be read severally, and therefore barring coverage only as to the claims against those insured executives who directly provided professional services to RRA.  Under their reading, the district court erred because claims against executives who were

4

merely responsible for internal managerial banking functions, like complying with federal reporting regulations, are not exempt from coverage.

We affirm.  Applying Florida law, and exercising plenary review, *see Hegel v. First Liberty Ins. Corp.*, 778 F.3d 1214, 1219 (11th Cir. 2015), we reach the same conclusion as the district court.

The district court properly observed "that the phrase any insured unambiguously expresses a contractual intent to create joint obligations."  D.E. 80 at 18 (quoting *Sales v. State Farm Fire & Cas. Co.*, 849 F.2d 1383, 1385 (11th Cir. 1988)) (internal quotation marks omitted).  The phrase "any insured," as we explained in *Sales*, generally makes the obligations under an insurance provision "jointly rather than severally held" and "unambiguously expresses a contractual intent to create joint obligations and to prohibit recovery by an innocent co-insured."  849 F.2d at 1385 (citing cases).  *Sales* involved Georgia law, but Florida law is generally in accord.  *See, e.g.*, *USAA Cas. Ins. Co. v. Gordon*, 707 So. 2d 1185, 1186 (Fla. 4th DCA 1998) ("We have no trouble concluding that exclusion (h), which excludes coverage for damage caused by 'any insured,' unambiguously results in joint property coverage in this case.") (citation omitted).

Understanding that the phrase "any insured" must be read in context, *see Kattoum*, 968 So. 2d at 604–05, we believe that the district court correctly interpreted the exclusionary language.  Here the professional services exclusion

5

twice uses the phrase "any insured," once in referring to the claim made and once in referring to the professional services rendered.  And that, we think, evinces an intent to create joint obligations.  *See Thoele v. Aetna Cas. & Sur.,* 39 F.3d 724, 725–27 (7th Cir. 1994) (holding, under Illinois law, that exclusion barring coverage for claims arising out of "business pursuits of any insured" included "injuries triggered by one insured in connection with the business pursuit of another").  This is not a case like *Michigan Millers Mut. Ins. Corp. v. Benfield*, 140 F.3d 915, 926 (11th Cir. 1998), in which we held, under Florida law, that the interchangeable use of the phrase "an insured" and "the insured" in a policy created an ambiguity and did not provide joint coverage or obligations "so as to exclude [an innocent insured] from recovering under the policy."

The trustees rely on *Premier Ins. Co. v. Adam*, 632 So. 2d 1054 (Fla. 5th DCA 1994), but that case does not call for a different result.  In *Premier*, the Fifth District explained that an insurance policy's severability clause resulted in separate insurable interests for each insured, such that each insured must be treated as holding separate insurance coverage.  *Id.* at 1055–57.  As a result, notwithstanding an exclusion stating that the policy "did not apply" to "bodily injury or property damage which is expected or intended by *any insured*," coverage could only be denied against an insured who actually committed the excluded act.  *Id.* at 1056–57 (emphasis added).  Here, however, the insurance policies issued by National Union

6

and Twin City do not contain a severability clause. And that difference in policy language is fatal to the trustees' argument. *See Taylor v. Admiral Ins. Co.*, 187 So. 3d 258, 260–62 (Fla. 3d DCA 2016) (citing *Premier* and concluding that exclusion applying to conduct of "any insured" would bar claim but for policy's severability clause); *Gordon*, 707 So. 2d at 1186 (explaining that without a severability clause an exclusion applying to the conduct of "any insured" creates a joint obligation).

As to the trustees' other arguments, we affirm on the basis of the district court's well-reasoned order.

**AFFIRMED**.

7