# FIFTH DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

———————————————

Case No. 5D2023-2788
LT Case No. 2020-CA-021292

———————————————

FLORIDA INSURANCE GUARANTY
ASSOCIATION,

    Appellant,

    v.

LAUREN MAUGER,

    Appellee.

———————————————

On appeal from the Circuit Court for Brevard County.
Dale Curtis Jacobus, Judge.

Dorothy DiFiore, of Quintairos, Priento, Wood & Boyer, P.A.,
Tampa, for Appellant.

Daniel P. Faherty, of Telfer, Faherty & Anderson, P.L.L.C.,
Titusville, for Appellee.

June 13, 2025

PER CURIAM.

    Florida Insurance Guaranty Association ("FIGA") appeals
the Final Summary Judgment entered in favor of Lauren Mauger
("Mauger"). Because the trial court erred when it failed to consider
a relevant policy provision and there is a genuine dispute of

material fact regarding whether Mauger's husband, Donald Slayman, violated that policy provision, we reverse and remand.

## Relevant Policy Provisions

In 2019, Mauger and Slayman (collectively "the Homeowners") owned a home in Titusville, Florida. Avatar Property and Casualty Insurance Company ("Avatar") issued a homeowners' insurance policy, which covered the home. The policy defines "you" and "your" as "the 'named insured' shown in the Declarations and the spouse if a resident of the same household." The "named insured" is identified on the declarations page as "Lauren Mauger & Donald Slayman." "Insured" is defined as: "you and residents of your household who are: a. Your relatives; or b. Other persons under the age of 21 and in the care of any person named above."

Section I of the policy contained property coverages, exclusions, and conditions. It covered losses to the dwelling and other structures caused by fire. Of relevance here, the "Concealment or Fraud" condition stated:

**SECTION I AND II CONDITIONS**

. . . .

2. **Concealment or Fraud.**

a. Under SECTION I – PROPERTY COVERAGES, with respect to all "insureds" covered under this policy, we provide no coverage for loss under SECTION I – PROPERTY COVERAGES if, whether before or after a loss, one or more "insureds" have:

> (1) Intentionally concealed or misrepresented any material fact or circumstance;
>
> (2) Engaged in fraudulent conduct; or
>
> (3) Made material false statements; relating to this insurance.

2

**Facts**

On September 3, 2019, while the policy was in effect, a fire started in the Homeowners' garage, causing extensive damage to the garage and the home. At the time, Slayman was home, but Mauger and their daughter were out of town. Slayman contacted Avatar the next day to report the fire.

Avatar hired an independent company to conduct its investigation into the cause of the fire. The company sent Jeffrey Merritt, a Certified Fire and Explosion Investigator through the National Association of Fire Investigators, to investigate the cause of the fire. In April 2020, Merritt completed a report detailing his findings regarding the cause of the fire.

On December 3, 2019, Mauger filed a claim with Avatar for damage to the home and its contents. Avatar requested that the Homeowners appear for Examinations Under Oath ("EUOs") and provide it with numerous documents as well as a sworn proof of loss. Both Mauger and Slayman appeared for EUOs on January 17, 2020.

During Slayman's EUO, he stated that he was a lieutenant with the Brevard County Fire Department. On September 3, 2019, Mauger and their daughter evacuated to Georgia due to Hurricane Dorian. Slayman was on duty so he remained in Titusville, but the hurricane changed paths and he was released from duty. After leaving work, he had a number of alcoholic drinks throughout the afternoon and evening.

Around 8:00 p.m., Slayman made himself dinner and went to the garage to prepare for the hurricane. He started the generator to make sure it still worked and he left it running while he went inside to finish making dinner. Slayman subsequently returned to the garage and attempted to pour gasoline into the running generator. He saw a "flash" and "fire went everywhere." Slayman attempted to get a fire extinguisher, but it was located on the far side of the garage. He was afraid he would get trapped while trying to get it, so he ran inside to get his phone. He was able to get out of the house safely and call 911.

3

After the firemen on the scene extinguished the fire, Slayman spoke with officials, including a detective with the State of Florida. Slayman admitted that he told the officials that he did not know how the fire had started. Slayman also admitted that when Merritt visited the house on September 11, 2019, and asked him about the cause of the fire, Slayman told him that he "wasn't sure" what had happened. Slayman explained that he did not tell anyone the true cause of the fire because he was intoxicated, embarrassed, and "worried about what insurance was going to say. . . . So I just, kind of, said I don't—I don't know. And it just kept, kind of, spiraling out of control at that point."

Mauger also appeared for an EUO. She confirmed that she was out of town when the fire started and did not have first-hand knowledge of the cause of the fire. Slayman first told her the truth about the cause of the fire in early December 2019. He also admitted to her that he had not been telling the truth before then. Mauger acknowledged that the first time that she or Slayman told Avatar the true cause of the fire was at the EUOs.

In March 2020, Avatar sent a letter to Mauger denying coverage for the claim because the Homeowners materially breached the policy in several respects, including but not limited to, failing to tell the truth about the cause of the fire when initially asked. Mauger subsequently filed a complaint against Avatar for breach of contract. Avatar filed a counterclaim and third-party complaint for breach of contract against the Homeowners and declaratory judgments against the Homeowners and Slayman individually.

In January 2021, Mauger filed her Motion for Summary Judgment as to liability, arguing that she was entitled to judgment as a matter of law because she was an innocent co-insured spouse who was entitled to coverage under the policy. As support for the motion, Mauger attached her affidavit, where she swore that she learned of the cause of the fire in early December 2019, when Slayman admitted that he poured gasoline into the running generator. She also attached the transcripts from her and Slayman's EUOs as well as the denial letter from Avatar. Mauger later filed the transcripts from her and Slayman's depositions.

On June 11, 2021, Avatar filed its Memorandum of Law in Opposition to the Motion for Summary Judgment, arguing that the Homeowners materially breached the policy in a number of respects. Of relevance here, Avatar argued that the Innocent Co-Insured Doctrine was inapplicable because there was evidence that Slayman repeatedly concealed and/or misrepresented material facts regarding the claim in violation of the Concealment or Fraud Condition of the policy. Thus, coverage was voided.

Avatar further argued that even if the court found that the Innocent Co-Insured Doctrine applied, there were material facts in dispute that would preclude summary judgment. Specifically, there was a question whether Mauger violated the policy when she concealed information from Avatar and did not immediately inform Avatar that Slayman started the fire when she learned that fact in December 2019. As support for its position, Avatar attached: (1) the policy; (2) Mauger's and Slayman's EUOs; (3) letters Avatar sent to the Homeowners in October 2019 requesting that they comply with the policy provisions and provide Avatar with certain documents; and (4) Avatar's letter denying the claim.

Avatar later timely filed an affidavit from its corporate representative, which, among other things, swore that Avatar hired a third-party investigator (Merritt) to investigate the cause of the fire. During that investigation, Slayman denied knowing how the fire started despite subsequently admitting that he started the fire by pouring gasoline into a running generator. Notwithstanding Slayman's claim, he did not have any injuries, burns, singed hair or burned clothes. In contrast to Slayman's version of events, the third-party investigator concluded that the fire was intentionally set by a direct flame introduced to combustible products. Avatar's corporate representative did not attach to his affidavit Merritt's report or the State investigator's findings.

After holding a hearing on June 18, 2021, the trial court entered summary judgment in favor of Mauger on the issue of liability. Both sides filed motions in response to the ruling. Mauger filed a Motion for Clarification and/or Reconsideration, requesting that the court enter a more specific order.

5

Avatar filed a timely Motion for Rehearing "based upon additional evidence obtained, which creates genuine issues of material fact, precluding summary judgment." Avatar subsequently filed an Amended Motion for Reconsideration of the Order Granting Summary Judgment, which argued that Slayman made intentional misrepresentations about what had occurred and how the fire started. Avatar cited to the Concealment or Fraud Condition and contended that there was evidence that Slayman: (1) concealed material facts; (2) misrepresented material facts; (3) engaged in fraudulent conduct; and (4) made material false statements. It contended that this conduct would bar coverage under the Concealment or Fraud Condition and, based on the "one or more insureds" language in the condition, Slayman's acts and omissions would bar recovery for both Slayman and Mauger.

After holding a hearing on the motions, the trial court entered an Order on Motions for Reconsideration, which granted Mauger's Motion for Clarification, denied Avatar's Motion for Rehearing and Amended Motion for Reconsideration, and again entered partial summary judgment in favor of Mauger. It found that there was no admissible evidence that Slayman intentionally caused the fire[1] and the record revealed "complete cooperation by Mauger through and including the date the claim was denied." Moreover, Mauger did not breach the policy in any way. Therefore, the trial court concluded that the loss was covered by the policy and Avatar was required to provide coverage for the loss.

Shortly after the trial court entered the Order on Motions for Reconsideration, the Leon County circuit court found Avatar to be insolvent and ordered Avatar into liquidation. In December 2022, the trial court substituted FIGA for Avatar in this case.

---

[1] We affirm FIGA's second issue on appeal, wherein it argued that there was a question of fact regarding whether Slayman intentionally started the fire with the intent to defraud Avatar. We note that Avatar did not file any evidence *before* the summary judgment hearing showing that Slayman intentionally set the fire, despite having access to that information, and the trial court acted within its discretion in rejecting this late-filed evidence.

Thereafter, Mauger filed her Motion for Final Summary Judgment. The trial court ultimately entered Final Summary Judgment in Mauger's favor in the amount of $500,000.

**Standard of Review**

Under the amended summary judgment rule, which applies to the order at issue because it was entered after May 1, 2021, the trial court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fla. R. Civ. P. 1.510(a). This summary judgment standard "shall be construed and applied in accordance with the federal summary judgment standard." *Id.* Initially, the moving party bears the "burden of identifying those portions of the record demonstrating the lack of a genuinely disputed issue of material fact." *Brevard County v. Waters Mark Dev. Enters., LC*, 350 So. 3d 395, 398 (Fla. 5th DCA 2022). If the movant meets this initial burden, "the burden shifts to the non-moving party to demonstrate that there are genuine factual disputes that preclude judgment as a matter of law." *Id.* To satisfy this burden, the non-movant "must go beyond the pleadings and 'identify affirmative evidence' that creates a genuine dispute of material fact." *Id.* (quoting *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998)). When deciding whether a genuine issue of material fact exists, the trial court must draw all factual inferences in a light most favorable to the non-moving party and it must resolve all factual disputes in the non-movant's favor. *Id.* We review an order granting summary judgment de novo. *Id.* at 399.

**Analysis**

On appeal, FIGA argues that the trial court erred when it failed to consider the Concealment or Fraud Condition. FIGA claims that the Concealment or Fraud Condition voided coverage because it avoids application of the Innocent Co-Insured Doctrine, which would normally allow an innocent co-insured to recover under a policy when her co-insured acted fraudulently.

In Florida, "an insurer is not liable to indemnify an insured for losses directly caused by the fraud or misconduct of that insured." *Kattoum v. New Hampshire Indem. Co.*, 968 So. 2d 602,

603 (Fla. 2d DCA 2007). However, when an insurance policy provides coverage for more than one insured, "the question arises as to whether the policy is intended to insure all named insureds jointly or whether the coverage is severable so as to provide separate coverage of the respective interests of two or more joint owners and co-insureds." *Id.* Moreover,

> [i]f the policy provides joint coverage, the fraud or misconduct of one insured can be imputed to an 'innocent co-insured.' However, Florida's courts have held that the intentional misconduct of one insured will only be imputed to an innocent coinsured where the insurance policy contains a clear statement that the misconduct of one insured abrogates the coverage of all insureds.

*Id.* (Internal citations omitted).

When determining whether an insurance policy provides joint or several coverage, the court must look to the language of the policy. *USAA Cas. Ins. Co. v. Gordon*, 707 So. 2d 1185, 1186 (Fla. 4th DCA 1998). Courts have found that a policy provides joint coverage "if fraud or dishonesty on behalf of *any* insured precludes coverage." *Golden Door Jewelry Creations, Inc. v. Lloyds Underwriters Non-Marine Ass'n*, 117 F.3d 1328, 1336 (11th Cir. 1997) (emphasis in original); *see also Gordon*, 707 So. 2d at 1186 ("We have no trouble concluding that exclusion (h), which excludes coverage for damage caused by *'any* insured'*, unambiguously results in joint property coverage in this case." (emphasis in original)). In a slightly different context, the Fourth District Court of Appeal concluded that a policy that "disclaimed coverage if one or more insureds" intentionally concealed or misrepresented any material fact permitted the insurer to rescind the policy as to the insured's resident wife, even though she did not sign the application containing the material misrepresentations, because the husband's material misrepresentations could be imputed to the wife. *See Moustafa v. Omega Ins. Co.*, 201 So. 3d 710, 716 (Fla. 4th DCA 2016).

In contrast, courts have found that the term "the insured" is ambiguous and requires a finding of severability, which allows an innocent co-insured to recover despite the fraud or concealment of

8

a co-insured. *See Michigan Millers Mut. Ins. Corp. v. Benfield*, 140 F.3d 915, 925–26 (11th Cir. 1998); *Golden Door Jewelry Creations*, 117 F.3d at 1336; *Auto-Owners Ins. Co. v. Eddinger*, 366 So. 2d 123, 123–24 (Fla. 2d DCA 1979).

The instant policy defines "you" and "your" as "the 'named insured' shown in the Declarations and the spouse if a resident of the same household." "Named Insured" is identified on the declarations page as "Lauren Mauger & Donald Slayman," and "Insured" is defined as: "you and residents of your household who are: a. Your relatives; or b. Other persons under the age of 21 and in the care of any person named above." The Concealment or Fraud Condition states that it provides "no coverage for loss under SECTION I—PROPERTY COVERAGES if, whether before or after a loss, **one or more "insureds"** have: (1) Intentionally concealed or misrepresented any material fact or circumstance; (2) Engaged in fraudulent conduct; or (3) Made material false statements; relating to this insurance." (Emphasis added).

Mauger never claimed that there was a resident of the household who was an insured. Therefore, the only insureds in this case were Mauger and Slayman. Under the plain language of the Concealment or Fraud Condition, Avatar would not provide coverage if, "whether before or after a loss, one or more 'insureds'" engaged in the aforementioned conduct. The phrase "one or more insureds" clearly indicates that Avatar would deny coverage if either of the insureds engaged in the identified conduct. Nothing in the phrase suggests that both insureds had to engage in the prohibited conduct in order for the condition to void coverage. In that respect, the term "one or more insureds" is more like the term "any insured" than "the insured." Both phrases "one or more insureds" and "any insured" clearly indicate that the actions of only one insured will result in denial of coverage for all insureds. *See Moustafa*, 201 So. 3d at 716; *see also Golden Door Jewelry Creations*, 117 F.3d at 1336; *Gordon*, 707 So. 2d at 1186.

Because the Concealment or Fraud Condition unambiguously requires only one of the insureds to intentionally conceal or misrepresent material information in order for coverage to be denied to all insureds, the actions of either Mauger or Slayman could have resulted in denial of the claim.

9

Below, there was evidence presented before the summary judgment hearing suggesting that Slayman intentionally concealed or misrepresented the true cause of the fire. During his EUO, Slayman admitted that he told Merritt (Avatar's third-party investigator) that he "wasn't sure" what happened. Slayman later admitted in his EUO that he accidentally started the fire when he poured gasoline into the running generator. During her EUO, Mauger admitted that Slayman told her the truth about the cause of the fire in early December 2019, but neither she nor Slayman told Avatar the truth until they appeared for their EUOs in January 2020.

This evidence created a genuine dispute of material fact on the issue of whether Slayman violated the Concealment or Fraud Condition by intentionally concealing or misrepresenting the true cause of the fire, which, if true, would have resulted in the policy being void as to both Mauger and Slayman. Therefore, the trial court erred in entering Final Summary Judgment in favor of Mauger without considering the Concealment or Fraud Condition.

For these reasons, we reverse the Final Summary Judgment and remand for a trial. We note that FIGA did not challenge on appeal the trial court's findings regarding the Intentional Loss Exclusion. Accordingly, we affirm the portion of the Order that entered summary judgment as to that provision, and remind the lower court that the Intentional Loss Exclusion should not be considered at trial.

AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.


EDWARDS, C.J., and WALLIS, J., concur.
EISNAUGLE, J., concurs in result only, with opinion.

10

---

*Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.*

---

EISNAUGLE, J., concurring in result only.

I agree that we must reverse the final summary judgment. As FIGA argues on appeal, the policy provides that "with respect to all 'Insureds' . . . we provide no coverage for loss . . . if . . . one or more 'insureds'" have breached the Concealment or Fraud provision. Therefore, the plain language of the policy provides that a breach of the Concealment or Fraud provision results in no coverage "with respect to all 'Insureds.'"

However, were I writing on a blank slate, I would affirm because this argument was not properly preserved. Indeed, FIGA did not rely on the "one or more 'insureds'" language until after the trial court entered its order granting summary judgment. As a result, this argument was not preserved for appellate review because it was not timely raised. *See Aills v. Boemi*, 29 So. 3d 1105, 1108 (Fla. 2010) ("First, the party must make a timely, contemporaneous objection at the time of the alleged error." (citations omitted)).

Nevertheless, our prior decision in *Elser v. Law Offices of James M. Russ, P.A.*, 679 So. 2d 309, 312 (Fla. 5th DCA 1996), is controlling. In *Elser*, we concluded that a party can raise an argument in opposition to summary judgment for the first time in a motion for rehearing and then rely on that "argument on appeal as grounds to reverse the summary final judgment." *Id*. While *Elser* was incorrectly decided, I am bound by it. *See Kawsar v. Alhamdi Grp., LLC*, 369 So. 3d 1227, 1229–30 (Fla. 5th DCA 2023) (Eisnaugle, J., concurring) ("In my view, *Elser* is incorrect because it fails to consider the first requirement of preservation—a timely and contemporaneous objection at the time of the error.").